**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OTTO DELCID, LUZ ROMAN, MINA KALLAMNI, MARY MOLINA, CARLO GARCIA, and ANDREA FAHEY on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>TCP HOT ACQUISITION LLC and IDELLE LABS, LTD,<br><br>        Defendants. | Case No. 1:21-cv-09569-VSB |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**RENEWED MOTION TO APPOINT INTERIM CLASS COUNSEL**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.  THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL
UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(G) .......................... 2

    A.  Proposed Interim Class Counsel Have Thoroughly Identified And
Investigated The Claims ..................................................................... 4

    B.  Proposed Interim Class Counsel Are Highly Experienced In
Handling Class Actions And Other Complex Litigation, And Have
An Established History Of Cooperation In Prosecution Of Related
Matters ................................................................................................ 6

        1.  Bursor & Fisher, P.A. ............................................................ 6

        2.  The Sultzer Law Group, P.C. ................................................ 8

        3.  Levin, Sedran & Berman LLP ............................................. 10

        4.  Milberg Coleman Bryson Phillips Grossman, PLLC ........... 17

    C.  Plaintiffs' Counsel Is Knowledgeable Regarding the Applicable
Law ................................................................................................... 17

    D.  Plaintiffs' Counsel Will Commit the Necessary Resources to
Representing the Class ...................................................................... 20

CONCLUSION .............................................................................................................. 23

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Blessing v. Sirius XM Radio Inc.*,
   2011 WL 1194707 (S.D.N.Y. Mar. 29, 2011) .......................................................................... 3

*de Lacour v. Colgate-Palmolive Co.*,
   338 F.R.D. 324 (S.D.N.Y. 2021) ............................................................................................ 8

*Debernardis v. IQ Formulations, LLC*,
   942 F.3d 1076 (11th Cir. 2019) ...................................................................................... 1, 18

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ....................................................................................... 6, 8

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................................................................ 8

*Gregorio v. Premier Nutrition, Corp.*,
   2019 U.S. Dist. LEXIS 9405 (S.D.N.Y. January 17, 2019) ................................................ 23

*Hart v. BHH, LLC*,
   2017 WL 2912519 (S.D.N.Y. July 7, 2017) ......................................................................... 8

*In re Municipal Derivatives Antitrust Litig.*,
   252 F.R.D. 184 (S.D.N.Y. 2008) .......................................................................................... 3

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015) ............................................................................ 8

*In re Trader Joe's Tuna Litig.*,
   2016 WL 7407329 (C.D. Cal. Dec. 21, 2016) ...................................................................... 3

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
   2021 WL 222776 (D.N.J. Jan. 22, 2021) ............................................................................. 1

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   2020 WL 5901116 (C.D. Cal. Sept. 23, 2020) ..................................................................... 8

*Martinelli v. Johnson & Johnson*,
   2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ..................................................................... 8

*Melgar v. Zicam LLC*,
   2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ..................................................................... 8

*Melgar v. Zicam, LLC,*
   2014 WL 5486676 (E.D. Cal. Oct. 29, 2014) .................................................... 3

*Perez v. Rash Curtis & Associates,*
   2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ................................................... 7

**STATUTES**

21 U.S.C. § 331(a) ........................................................................................................ 1

21 U.S.C. § 352 ............................................................................................................. 1

**RULES**

Fed. R. Civ. P. 23(c)(1) ............................................................................................... 5

Fed. R. Civ. P. 23(g) ............................................................................................. 2, 23

Fed. R. Civ. P. 23(g)(1) ............................................................................... 3, 4, 6, 20

Fed. R. Civ. P. 23(g)(3) ............................................................................................... 2

**OTHER AUTHORITIES**

Annotated Manual for Complex Litigation (4th ed. 2006) .............................. 2, 3

*Autonomy, Peace, and "Put" Options in the Mass Tort Class Action,*
   115 Harv. L. Rev. 747 (2002), ................................................................................ 11

Fed. R. Civ. P. 23,
   Advisory Committee Notes (2003) .................................................................... 4, 5

Moore's Federal Practice § 23.120(3)(a) (3d. Ed. 1998) ........................................ 4

## INTRODUCTION

Plaintiffs Otto Delcid, Luz Roman, Mina Kallamni, Mary Molina, Carlo Garcia, and Andrea Fahey (collectively "Plaintiffs") move for an order appointing Bursor & Fisher, P.A. ("Bursor & Fisher"), The Sultzer Law Group, P.C. ("Sultzer Law Group"), Levin, Sedran & Berman LLP ("LSB"), and Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") (collectively "Plaintiffs' Counsel") as interim class counsel.  Appointment of counsel at this stage is appropriate because while the *Delcid* case was the first-filed case in the country, other later-filed lawsuits are likely to be filed in the future.  As such, appointment of counsel at this stage is appropriate.  All four firms would have an equal voice as to the overall prosecution and management of these cases, and notably all have significant experience litigating drug product cases involving similar carcinogens as are at issue here. Appointment of Plaintiffs' Counsel as interim class counsel will best ensure that this matter is litigated efficiently and effectively. Plaintiffs respectfully request that this Court endorse the consensual leadership proposal.

## RELEVANT BACKGROUND

Sure and Brut are brands of aerosol antiperspirants manufactured, distributed, and sold by Defendants.  The Products discussed herein contain benzene, a carcinogenic chemical impurity that has been linked to leukemia and other cancers.  The Products are not designed to contain benzene, and in fact no amount of benzene is acceptable in antiperspirant sprays such as the Products manufactured by Defendants.  The presence of benzene in the Products renders them adulterated and misbranded, and therefore illegal to sell under both federal and state law.  As a result, the Products are unsafe and illegal to sell under federal law, and therefore worthless.  *See* 21 U.S.C. §§ 331(a), 352; *see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,* 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021).

Benzene is a component of crude oil, gasoline, and cigarette smoke, and is one of the elementary petrochemicals.  The Department of Health and Human Services has determined that benzene causes cancer in humans.  Likewise, the Food and Drug Administration ("FDA") lists benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."  Benzene is associated with blood cancers such as leukemia.[1]  A study from 1939 on benzene stated that "exposure over a long period of time to any concentration of benzene greater than zero is not safe,"[2]  which is a comment reiterated in a 2010 review of benzene research specifically stating: "There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion."[3]

Plaintiffs' Counsel have self-organized and now seek appointment as interim class counsel so that counsel's roles may be clearly defined and to streamline the litigation moving forward.

## ARGUMENT

I. **THE COURT SHOULD APPOINT INTERIM CLASS COUNSEL UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(G)**

The appointment of interim class counsel is recommended early in the litigation, prior to class certification, to protect the interests of the putative class.  *See* Fed. R. Civ. P. 23(g); ANNOTATED MANUAL FOR COMPLEX LITIGATION (4th ed. 2006) (the "MANUAL").  Under Federal Rule of Civil Procedure 23(g)(3), a "court may designate interim counsel to act on behalf of the

---

[1] National Cancer Institute, Cancer-Causing Substances, Benzene. https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/benzene.

[2] Hunter, F.T. (1939). Chronic Exposure to Benzene (Benzol). II. The Clinical Effects. *Journal of Industrial Hygiene and Toxicology*. 1939 Vol.21 pp.331-54 (https://www.cabdirect.org/cabdirect/abstract/19402700388)

[3] Smith, Martyn T. (2010). Advances in Understanding Benzene Health Effects and Susceptibility. *Annual Review of Public Health*. 2010 Vol. 31:133-148 (https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646)

putative class before determining whether to certify the action as a class action."

Although the rule states the court "may" appoint interim counsel, courts construing Rule 23(g)(3) have relied on the Advisory Committee Notes accompanying the rule to hold that appointment of interim class counsel is useful because it "clarifies responsibility for protecting the interests of the class during precertification activities." *In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184, 185 (S.D.N.Y. 2008) (internal citations omitted). As stated in the MANUAL, the Court should "conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." MANUAL at § 10.22. Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* at § 10.221. Appointment of interim class counsel is particularly appropriate in this case, where "there are a number of overlapping, duplicative, or competing suits pending in other courts … In such cases, designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* at § 21.11.

While neither Rule 23 nor the Notes expressly so state, it is generally accepted that the considerations set out in Rule 23(g)(1), which governs the appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification. *See*, *e.g.*, *In re Trader Joe's Tuna Litig.*, 2016 WL 7407329, at *3 (C.D. Cal. Dec. 21, 2016); *Melgar v. Zicam, LLC*, 2014 WL 5486676, at *2 (E.D. Cal. Oct. 29, 2014). In general, a class is fairly and adequately represented where counsel is qualified, experienced and generally capable of conducting class action litigation. *See Blessing v. Sirius XM Radio Inc.*, 2011 WL 1194707, at *4 (S.D.N.Y. Mar. 29, 2011). Rule 23(g)(1)(A) provides, in relevant part, that in appointing class

3

counsel the Court must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)   the resources that counsel will commit to representing the class.

Fed R. Civ. P. 23(g)(1).  Each of these considerations, as detailed below, support the appointment

of Bursor & Fisher, Sultzer Law Group, LSB, and Milberg as co-lead interim class counsel.

### A.    Proposed Interim Class Counsel Have Thoroughly Identified And Investigated The Claims

While no one factor under Fed. R. Civ. P. 23(g)(1) "should necessarily be determinative"

(Advisory Committee Notes (2003)), the investigative and analytical efforts of

counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

MOORE'S FEDERAL PRACTICE § 23.120(3)(a) (3d. Ed. 1998) (emphasis added).

Plaintiffs' Counsel have already invested substantial time and effort researching possible

claims, analyzing the industry and history, developing legal strategies, and talking with clients,

among other work. Their efforts to date preview their commitment to the putative class members.

For example, among other tasks, Plaintiffs' Counsel performed the following investigative work

thus far:

(a) Investigating potential legal claims arising from the contamination of Defendants' aerosol spray deodorant with benzene as described in the complaints;

(b) Investigated Defendants' representations regarding the aerosol spray deodorant contaminated with benzene;

(c) Researched Defendants' corporate structure;

(d) Investigated potential damages models necessary for the claims;

(e) Investigated the challenged conduct at issue by interviewing numerous putative class representatives;

(f) Evaluated the adequacy of the named Plaintiffs; and

(g) Drafted and filed complaints in the above-referenced actions.

These investigative efforts represent a high standard of professionalism, dedication, and thoroughness, which have been marshaled to identify, develop, and demonstrate the claims alleged in the various Complaints. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the Court should consider in appointing interim class counsel.

The Notes also contemplate that the appointment of interim class counsel may be necessary to conduct pre-certification discovery before determining whether to grant or deny class certification pursuant to Fed. R. Civ. P. 23(c)(1), given that "some discovery is often necessary for that determination." *See* Fed. R. Civ. P. 23, Advisory Committee Notes (2003). The Notes also state "[o]rdinarily such work is handled by the lawyer who filed the action." *Id*. Here, extensive discovery and related motion practice is expected to take place before class certification. *See id.* (noting that interim class counsel may be necessary to "make or respond to motions before certification"). Discovery may be complicated and may require negotiations and motions before class certification. Plaintiffs' Counsel's thorough investigation into the claims and substantial resources will enable them to more than adequately handle this discovery and related motion practice.

5

**B.      Proposed Interim Class Counsel Are Highly Experienced In Handling Class Actions And Other Complex Litigation, And Have An Established History Of Cooperation In Prosecution Of Related Matters**

The second factor the court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). As demonstrated below, Plaintiffs' Counsel are well-versed in class actions and complex litigation. Notably, Plaintiffs' Counsel are well-versed in litigation related to toxic chemical impurities. Similar to those other litigations, this matter will require substantial monetary and human resources, rendering the proposed leadership structure particularly appropriate.

**1.      Bursor & Fisher, P.A.**

Bursor & Fisher has "extensive experience in handling class actions and complex litigation, including products liability and consumer protection cases." *In re Welspun Litigation*, Case No. 7:16-cv-6792, ECF No. 58, at 2 (S.D.N.Y. Jan. 26, 2017). As Judge Jed S. Rakoff of the Southern District of New York recognized in appointing the firm as class counsel, "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014). The firm also has substantial leadership experience in class actions involving contaminated products. Bursor & Fisher currently serves as co-lead interim class counsel in *In re Metformin Marketing And Sales Practices Litigation*, Case No. 2:20-cv-02324-MCA-MAH (D.N.J.). Further, two of the undersigned counsel at Bursor & Fisher—Sarah N. Westcot and Andrew J. Obergfell—were appointed to the leadership structure in *In re: Zantac (Ranitidine) Products Liability Litigation*, 9:20-md-2924 (S.D. Fla.) and *In re Valsartan Losartan and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875-RBK (D.N.J.), respectively. To date, Bursor & Fisher lawyers (including the

6

undersigned counsel) have devoted substantial time and resources to prosecuting the class action claims in all three cases.

More generally, within the past seven years, Bursor & Fisher lawyers have been court-appointed counsel or interim class counsel in more than 50 class actions, including a number of actions in this District. *See*, *e.g.*, *de Lacour v. Colgate-Palmolive Co.*, Case No. 1:16-cv-08364 (S.D.N.Y.) (Wood, J.); *In re Welspun Litig.*, Case No. 7:16-cv-6792 (S.D.N.Y.) (Sullivan, J.); *Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y.) (Pauley III, J.); *Edwards v. Hearst Communications, Inc.*, Case No. 1:15-cv-09279, (S.D.N.Y.) (Torres, J.); *Ebin v. Kangadis Food Inc.*, 1:13-cv-02311 (S.D.N.Y.) (Rakoff, J.); *In re Scott's EZ Seed Litig.*, Case No. 7:12-cv-4727 (S.D.N.Y.) (Briccetti, J.); *Rodriguez v. CitiMortgage, Inc.*, Case No. 1:11-cv-04718 (S.D.N.Y.) (Gardephe, J.).

Class actions are rarely brought to trial. Bursor & Fisher, however, has served as lead trial counsel for class action plaintiffs in six jury trials since 2007, and has won all six. Most recently, in May 2019, Bursor & Fisher, serving as lead trial counsel, secured a jury verdict and judgment that the defendant violated the Telephone Consumer Protection Act 534,712 times, entitling class members to $267 million in statutory damages. *See Perez v. Rash Curtis & Associates*, Case No. 4:16-cv-03396-YGR (N.D. Cal. Sep. 9, 2019) (final judgment entered for $267 million); *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *21 (N.D. Cal. Apr. 17, 2020) (upholding $267 million award and praising "the general quality of the representation and the complexity and novelty of the issues" and that "[t]he benefit obtained for the class is an extraordinary result"). While serving as lead trial counsel in *Thomas v. Global Vision Products, Inc.*, Bursor & Fisher obtained a $50 million jury verdict for the plaintiff and class. In another example, in *Ayyad v. Sprint Spectrum, L.P.*, Bursor & Fisher obtained a $299 million trial verdict for a class of Sprint customers on a claim for unjust enrichment.

7

Bursor & Fisher also has substantial experience litigating and certifying contested claims on behalf of nationwide and multi-state classes. *See, e.g.*, *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324 (S.D.N.Y. 2021)[4]; *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019); *Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017); *Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 31, 2016); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. Jan. 26, 2015); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014).

### 2.     The Sultzer Law Group, P.C.

The Sultzer Law Group, P.C. is a leading New York class action firm which specializes in representing plaintiffs in complex class actions against sellers and manufacturers of consumer products throughout the country.  *See* The Sultzer Law Group Firm Resume attached hereto as Ex. A to the Declaration of Jason P. Sultzer ("Sultzer Decl.").  Since its inception in 2013 the firm has been appointed as lead or co-lead counsel in numerous high-profile class action litigations and has obtained over $1 billion in settlements on behalf of consumers.  Sultzer Decl. ¶ 2, Ex. A.  Jason P. Sultzer, the founding partner of The Sultzer Law Group, has 25 years of experience representing parties in cases involving consumer deception and unfair, unlawful, and fraudulent business practices, often in connection with the labeling of potentially dangerous products.  Mr. Sultzer and his firm have created extensive case law and have obtained significant class-wide settlements in this Circuit in false advertising and mislabeling class actions involving all types of consumer products.  *Id.* ¶ 7, Ex. A.

---

[4] Ms. Westcot served as lead counsel in the *de Lacour* matter.

The firm has been recognized in the media and by its peers as a preeminent class action firm.  The firm is included in Martindale-Hubbell's Bar Register of Preeminent Lawyers for its class action practice.  Sultzer Decl. ¶ 3.  All of the partners in the firm are AV rated by Martindale-Hubbell and have been selected as Super Lawyers.  *Id.*  The firm's attorneys have contributed to or been featured in various well-known publications regarding their class action practice, including: Law360, Inside Counsel Magazine, Risk Management Magazine, CNBC News, Reuters, Bloomberg News, and the New York Post.  *Id.* ¶ 4.  The Sultzer Law Group was named the best nationwide civil dispute firm in the U.S. Business News Legal Elite Awards in 2020.  *Id.*

In addition, Judges in this Circuit have recognized The Sultzer Law Group for their exceptional work.  *See Patora v. Tarte, Inc.*, Case No. 18-cv-11760-KMK (S.D.N.Y.), (Judge Kenneth M. Karas stated that "[t]he plaintiff here was ably represented by class counsel, who is clearly well-versed in complex class action litigation.  I can speak from personal experience dealing with The Sultzer Firm, which has many highly-qualified and capable and experienced lawyers representing plaintiffs in consumer class actions. . ."); *see also Shiv Patel v. St. John's University*, Case No. 1:20-cv-02114 (EDNY) (Judge Steven Gold observed that, "The firms' expertise and competency in the class action context are reflected by the favorable outcomes they have obtained in previous suits… particularly in light of their impressive record."); *Griffin, Anthony, et al., v. Aldi, Inc., Doe Defendants 1-10*, Case No. 16-cv-00354 (N.D.N.Y.) (Judge Lawrence E. Kahn stated that "The quality of the representation also supports the award. Plaintiffs' Counsel have worked diligently and are experienced and well-versed in wage and hour cases and class actions."); *Susan Swetz et al v. GSK Consumer Health, Inc.*, Case No. 7:20-cv-04731 (SDNY) (Judge Román stated that "Class Counsel have prosecuted the Litigation with skill, perseverance, and diligence, as reflected by the Settlement Fund achieved and the positive reception of the Settlement Agreement by the Settlement Class.").  Sultzer Decl. ¶ 8, Ex. A.

9

Additionally, Mr. Sultzer has significant trial experience with cases involving toxic chemicals, such as the instant matter. *Id.* ¶ 9. Mr. Sultzer has earned selection as a Senior Fellow of the Litigation Counsel of America (LCA), recognizing the country's top trial attorneys. Mr. Sultzer is also a member of the LCA's Trial Law and Diversity Institute and its Honorary Order of Juris (consisting of attorneys who have tried fifty or more bench or jury trials to verdict). *Id.* ¶ 10, Ex. A. Mr. Sultzer has also been named in Lawdragon's list of 500 Leading Plaintiff Financial Lawyers for 2019, 2020, and 2021. *Id.* Mr. Sultzer's significant trial experience with cases involving hazardous materials combined with his class action experience will undoubtedly benefit lead counsel and the class.

### 3. Levin, Sedran & Berman LLP

LSB is one of the nation's preeminent and most experienced plaintiff class-action firms with extensive experience and expertise in consumer protection, products liability, antitrust, securities and other complex class-action litigation. LSB's stock-and-trade is the litigation of technically complex litigation such as this one. LSB has been appointed lead counsel or to other leadership positions in hundreds of cases, including more than forty MDLs, and is presently serving or has served in such positions in several of the largest and technically complex class actions nationwide. *See e.g.*, *In re Chinese-Manufactured Drywall Product Liab. Litig.*, MDL No. 2047 (E.D. La.) (Lead Counsel); *In re Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323 (E.D. Pa.) (Plaintiffs Steering Committee and Subclass Counsel for Settlement); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL 2179 (E.D. La.) (Special Counsel to the Plaintiffs' Fee and Cost Committee); *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D. N.Y.) (Co-Lead counsel); *In re Wells Fargo Insurance Marketing Sales Practices Litigation*, MDL No. 2797 (C.D. Ca.) (Plaintiffs' Executive Committee); and *In re Apple Inc. Device Performance Litigation*, MDL 2827 (N.D. Ca.)

(Plaintiffs' Executive Committee); *see* also LSB's firm resume attached as Exhibit "E". LSB's firm philosophy from leading and prosecuting complex class actions for over three decades is to efficiently, vigorously and zealously prosecute the action on behalf of their clients and the class. They become experts in the facts of the case, law, and science and assemble a team committed to doing the same. LSB is prepared to do the same in this case.

As a result of its success representing consumers in complex litigation throughout the country, LSB has been distinguished as a Tier I class-action firm in the Best Law Firms rankings published in the U.S. News and World Report Best Law Firms. LSB was also ranked Tier I for personal injury and mass tort firms. LSB was named to THE NATIONAL LAW JOURNAL'S insurance list of America's Elite Trial Lawyers in 2014. Members of LSB are listed in the LEGAL 500, LAW DRAGON 500, Martindale Hubbell's Directory of Preeminent Attorneys, and have been named the Best Lawyers in America. *See* generally, LSB firm resume attached as Exhibit "E".  LSB pioneered the use of class actions and mass actions in the United States and its work has resulted in numerous record-breaking recoveries over the past four decades. Just for example:

- *In re: Asbestos School Litigation*, No. 83-0263 (E.D. Pa.) (LSB as member of Executive Committee and Lead Trial Counsel obtained a certification of a nationwide class and settlement on behalf of school districts);

- *In re: Diet Drug Product Liability Litigation*, MDL No.: 1203 (E.D. Pa.) (LSB as Co-Lead Counsel obtained a $6.75 billion-dollar settlement on behalf of consumers who ingested Fen Phen); [5]

- *In re: The Exxon Valdez*, No. 89-00095 (D. Alaska) (LSB as a member of the Trial and Discovery Committee represented fishermen, native corporations, native villages, native claims and business claims in this mass tort. After a jury trial, Plaintiffs obtained a judgment of $5 billion in punitive damages - at the time the largest punitive damage verdict in U.S. history. Later reduced to $507.5 million by the U.S. Supreme Court);

---

[5] That prolix settlement has received favorable comments by academia. See Richard A. Nagareda, *Autonomy, Peace, and "Put" Options in the Mass Tort Class Action*, 115 HARV. L. REV. 747, 756 (2002).

- *In re: Chinese-Manufactured Drywall Product Liability Litigation*, MDL No.: 2047 (E.D. La.) (LSB as Lead Counsel obtained inter-related settlements involving various suppliers, builders, installers, insurers and manufacturers of Chinese drywall valued in excess of $1 billion);

- *In re: The Vioxx Product Liability Litigation*, MDL No.: 1657 (E.D. La.) (As a member of the PSC and Plaintiffs' Negotiating Committee, LSB was instrumental in achieving a $4.85 billion-dollar settlement on behalf of consumers who ingested Vioxx);

- *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D. N.Y.) (As Co-Lead counsel in the decade long air cargo antitrust litigation Levin Sedran obtained 28 inter-related settlements against air cargo service providers totaling $1.2 billion dollars);

- *Galanti, et al. v. The Goodyear Tire and Rubber Co. ("Entran II")*, Civil Action No.: 03-209 (D. N.J.) (As a member of the Executive Committee Levin Sedran was instrumental in negotiating and achieving the creation of a common fund in the amount of $344,000,000); and

- *In re: National Football League Players' Concussion Injury Litigation*, MDL No.: 2323 (E.D. Pa.) (As Subclass Counsel working along with Lead Counsel LSB obtained an uncapped settlement valued in excess of $1 billion dollars on behalf of NFL football players).

Charles E. Schaffer will be leading the LSB team in this litigation. He is a partner with the firm and has achieved an AV peer-review rating in Martindale Hubbell. With over 25 years of experience, he is a nationally recognized leader in complex litigation, having been appointed as Lead or Co-Lead counsel or as a PSC member on a regular basis by federal courts across the country, including in consumer class actions involving unfair and deceptive practices such as this one.[6] Mr. Shaffer and LSB regularly prosecutes multi-state consumer class actions and has one of

---

[6] His appointments in MDL litigation include *inter alia In re Apple Inc. Device Performance Litig.*, MDL No. 2827 (N.D. Cal.) (Plaintiffs' Executive Committee); *In re Intel Corp. CPU Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2838 (D. Or.) (Plaintiffs' Executive Committee); *In Re Aqueous Film-Foaming Foams (AFFF) Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.) (Plaintiff's Steering Committee); *In re Wells Fargo Insurance Mktg. Sales Practices Litig.*, MDL No. 2797 (C.D. Cal.) (Plaintiffs' Executive Committee); *In re: JP Morgan Modification Litig.*, MDL No. 2290 (D. Mass.) (Plaintiffs' Co-lead Counsel*); In re: IKO Roofing Prods. Liab. Litig.*, MDL No. 2104 (C.D. Ill.) (Plaintiffs' Co-lead Counsel); *In re: HardiePlank Fiber Cement Siding Litig.*, MDL No. 2359 (D. Minn.) (Plaintiffs' Executive Committee); *In re Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Executive Committee*); In re: Azek Decking Sales Practice Litig.*, No. 12-6627 (D.N.J.) (Plaintiffs' Executive Committee); *In re: Pella*

the best track records in the country when it comes to successfully litigating consumer classes and complex cases, developing practical damages methodologies, obtaining prompt relief for consumers victimized by unfair or deceptive practices, and working cooperatively with others. *See* cases discussed *supra*; *See* also LSB's firm resume attached as Exhibit "E". Through smart, efficient, strategy and tailored creative problem-solving Mr. Schaffer and LSB have recovered billions of dollars for victims of defective products and unfair or deceptive practices. *Id*. They have accomplished these outstanding global and class settlements while zealously prosecuting the action while minimizing costs and maximizing value.[7]

---

*Corporation Architect & Designer Series Windows Mktg. Sales Practices & Prod. Liab. Litig*., MDL No. 2514 (D.S.C.) (Plaintiffs' Executive Committee); *In re: Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Steering Committee*); In re: CitiMortgage, Inc. Home Affordable Modification Program ("HAMP")*, MDL No. 2274 (C.D. Cal.) (Plaintiffs' Executive Committee); *In re: Carrier IQ Consumer Privacy Litig.*, MDL No. 2330 (N.D. Cal.) (Plaintiffs' Executive Committee); *In re: Dial Complete Marketing & Sales Practices Litig.*, MDL No. 2263 (D.N.H.) (Plaintiffs' Executive Committee); *In re: Emerson Electric Co. Wet/Dry Vac Mktg. & Sales Litig.*, MDL No. 2382 (E.D. Miss.) (Plaintiffs' Executive Committee); *In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Mktg. & Sales Practice Litig.*, No. 12-md-2320 (D.N.H.) (Plaintiffs' Executive Committee); *and Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05373-TEH (N.D. Cal.) (Plaintiffs' Executive Committee). In addition, Mr. Shaffer has served as member of litigation teams where LSB was appointed to leadership positions, in *inter alia*. *In re Chinese-Manufactured Drywall Product Liability Litigation*, MDL No. 2047 (E.D. La.); *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); *In re Orthopedic Bone Screw Products Liability Litigation*, MDL No. 1014 (E.D. Pa.); and *In re Diet Drug Litigation*, MDL No. 1203 (E.D. Pa.).

[7] For example, Mr. Schaffer was instrumental in bringing about settlements in *inter alia In re Wells Fargo Insurance Marketing Sales practices Litigation*, MDL No. 2797 (C.D. Cal.) which was approved by the Court in 2019 and was  claims made settlement valued at $300 million dollars, *Herrera v. Wells Fargo Bank, N.A.*, Case No. 8:18-cv-00332 (C.D. 2021) which was a common fund settlement in excess of $500 million dollars approved in 2021; *In Re CertainTeed Corporation Roofing Shingles Product Liability Litigation*, MDL No.: 1817 (E.D. Pa.) which was approved by the court in 2010 and valued at $815,000,000, *In re CertainTeed Fiber Cement Siding Litigation*, MDL No: 2270 (E.D. Pa.) which was a common fund settlement of $103.9 million dollars *and Pollard v. Remington Arms Company*, Case No. 4:13-CV-00086-ODS (W.D. Mo.) which was approved by the court in 2016 and valued at $97,000, 000. *See* LSB's Firm Resume attached hereto as Exhibit "E".

Of particular relevance to this litigation, Mr. Schaffer and LSB have prosecuted and are currently prosecuting extremely technical cases involving unfair or deceptive practices by manufacturers of consumer products including sunscreen and deodorants laden with benzene, dog food contaminated with toxins, building products, soap, appliances, computers, phones, dietary and nutritional supplements, energy drinks, and many other products. All these cases share the same core issues such as whether the products conform to the manufacturer's representations regarding the product's ingredients or attributes and the damages to consumer as a result of purchasing and paying for the products based on these false and misleading representations. In relation to the food (human and pet food) products, nutritional supplements, sunscreens and deodorant, the core issues are whether the products contained only the listed or represented ingredients and not a toxin, contaminant or unintended byproduct.

Mr. Schaffer's particularized experience involving pet food cases and baby food cases involving heavy metals, toxins and other unintended by products will translate directly to the benefit of the putative class members who used sunscreen laden with benzene. Recently, Mr. Schaffer served as member of the Executive Committee in the recently settled *In Re: Hill's Pet Nutrition, Inc., Dog Food Products Liability, Litig.*, 2:19-md-02887-JAR-TJJ (D. Kan.). During this litigation, he gained valuable experience prosecuting claims on behalf of pet owners nationwide who purchased recalled dog food that sickened and poisoned thousands of dogs nationwide due to the presence of toxic levels of Vitamin D. Mr. Schaffer was also involved in a line of cases against Champion, another dog food manufacturer, for misleading consumers regarding the quality of its dog food and ingredients which contained heavy metals. In addition to the Hills and Champion line of cases, he handled several other deceptive pet food labeling cases such as *Shaw v. Schell & Kampter, Inc., d/b/a Diamond Pet Foods*, N0. 2:20-cv-01620 (W.D. Wash.) and *Hill v. Canidae Corporation*, No. 20-cv- 01374 (C.D. Ca.) which recently settled on a

nationwide class basis offering meaningful cash payments to the class. These cases were filed after a full investigation including retaining experts to test the dog food product's ingredients and developing a methodology to calculate the damages sustained by the class. The result of testing and proposed damage methodology was provided to defendant manufacturers which led to settlements in both cases. Mr. Schaffer is also currently prosecuting a class action against Midwestern Pet Foods on behalf of consumers who purchased dog food on believing the products were safe when in reality they contained a toxin (Aflatoxin) which sickened or killed their dogs. *In re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litigation*, No.: 3:21-cv-00007 (S.D. Ind.). He is also currently serving as a member of the Executive Committee in *In re Plum Baby Food*, Case No. 1:21-cv-02417-NLH-SAK (D.NJ.) which involves baby food tainted with heavy metals.  As a result of Mr. Schaffer's experience in litigating these deceptive labeling claims, he is well versed in what will be needed to satisfy Plaintiffs' burdens of proof in this litigation including the necessary expert opinions as well as damage modeling experts. These experiences and knowledge will certainly benefit the class in the litigation

In addition to representing consumers in deceptive labeling cases, LSB and Mr. Schaffer have also represented children who were poisoned by lead paint, individuals who either ingested toxins either by drinking contaminated water or breathing in contaminated air and homeowner's whose property suffered diminished value due to contamination of soil, water and air. LSB has served as Lead Counsel and as a member of a PSC or Executive Committee in environmental class actions and mass tort lawsuits including some of the most prominent ones in American history ranging from nuclear meltdowns, toxic exposure (lead paint, asbestos), oil spills and gasoline discharges. *See e.g.*, *In re: Asbestos School Litigation*, No. 83-0263 (E.D. Pa.) (LSB as member of Executive Committee and Lead Trial Counsel obtained a certification of a nationwide class and settlement on behalf of school districts); *In re Three Mile Island Litigation*, Civil Action No. 79-

0432 (M.D. Pa.) (As member of Executive Committee obtained the establishment of a medical monitoring fund), *In re: The Exxon Valdez*, No. 89-00095 (D. Alaska) (As a member of the Trial and Discovery Committee represented fishermen, native corporations, native villages, native claims and business claims in this mass tort. After a jury trial, Plaintiffs obtained a judgment of $5 billion in punitive damages - at the time that the largest punitive damage verdict in U.S. history. Later reduced to $507.5 million by the U.S. Supreme Court); and *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL 2179 (E.D. La.) (Special Counsel to the Plaintiffs' Fee and Cost Committee*); Ursula Stiglich Wagner, et al. V. Anzon, Inc., et. al.,* No, 4420,  June Term, 1987 (C.C.P. Phila. Cty.) (As Lead Counsel obtained a multi-million-dollar recovery for medical monitoring and property damage in relation to lead contamination.); *Johnson, et al. v. Walsh, et. al.*, No. 2012 April Term, 2008 (C.C.P. Phila. Cty.) (As Lead Counsel obtained a multi-million-dollar recovery for property damage in relation to lead and arsenic contamination.); *Meneghin v. Exxon Mobil Corporation*, *et. al.*, Superior Court of New Jersey, Civil Action No. OCN-002697-07 (Superior Court, Ocean County, NJ 2012) (As Lead Counsel obtained a multi-million-dollar recovery for property damage in relation to discharge of gasoline leading to groundwater contamination).

        LSB and Mr. Schaffer have prosecuted these cases from their inception, through discovery, to certification of class(es), to settlements and in some instances to trial. Currently, Mr. Shaffer is serving as a member of Plaintiffs' Executive Committee in *In re: Aqueous Film-Foaming Foams (AFFF)Products Liability Litigation*, MDL 2873 (D.S.C.) which involves the contamination of the nation's water supply with PFAS chemicals. The MDL involves cases being brought against the manufacturers of the AFFF firefighting products on behalf of water suppliers who are required to remove the contamination from the water they provide, firefighters who are inflicted with cancer and from diseases from direct exposure to the AFFF products, individuals who drank the

contaminated water and are inflicted with cancers and other diseases, and property owners whose homes suffered diminished value to the contamination of their water and soil. 1.   Along with his class action and mass tort experience, Mr. Schaffer has a LLM in Trial Advocacy and has extensive experience prosecuting complex individual actions on behalf of injured individuals in products liability, medical negligence and drug and medical device actions.  He has served as Lead Counsel in these matters and successfully tried cases to jury verdicts.  Undoubtedly, Co Lead Counsel will benefit from his insight and experience from prosecuting those actions.

### 4.    Milberg Coleman Bryson Phillips Grossman, PLLC

Milberg Coleman Bryson Phillips Grossman, PLLC is a leading plaintiffs' firm with an international presence and regional offices throughout the United States.[8] *See* Milberg Coleman Bryson Phillips Grossman, PLLC Firm Resume attached hereto as Ex. A to the Declaration of Nick Suciu III ("Suciu Decl."). Founded in 1965, the firm has nearly six decades of experience in complex litigation, including: class action lawsuits, antitrust and competition law, dangerous drugs and devices, consumer products and services, environmental and toxic torts litigation, and securities litigation. Suciu Decl. ¶ 12, Ex. A.

The firm and its affiliates have been appointed as lead or co-lead counsel in numerous high-profile class action litigations and mass torts and have obtained over $50 billion in settlements on behalf of consumers. *Id.* ¶ 13. The firm has immense experience representing parties against unlawful and fraudulent business practices, product mislabeling, and drug defect cases. *Id.* ¶ 14. The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, and Super Lawyers, among others, and possess a

---

[8] Milberg has offices in New York, California, Florida, Georgia, Illinois, Kentucky, Louisiana, Michigan, Mississippi, North Carolina, South Carolina, Kentucky, Tennessee and Puerto Rico. Recently, Milberg opened offices in Amsterdam and London that serve clients in the European Union. In addition, Milberg has expanded in South America, with primary emphasis in Brazil.

renowned depth of legal expertise, employ the highest ethical and legal standards, and pride themselves on providing stellar service and achieving extraordinary results for their clients. *Id*. ¶ 15.

Nick Suciu III is a Senior Partner with Milberg and will head the Milberg team in this litigation. *Id.* ¶ 4.  Mr. Suciu has focused his legal practice for the past 10 years in the area of Consumer Products Class Actions, specifically focusing on violations of the United States Food, Drug, and Cosmetic Act ("FDCA") and parallel state statutes. *Id.* ¶ 16.  Mr. Suciu, as lead counsel, has helped form the landscape regarding preemption and standing in cases involving violations of the FDCA and parallel state statutes, along with receiving favorable settlements in cases with a focus on manufacturing processes and laboratory testing:

- *Corbett v. Pharmacare U.S. Inc.*, No. 3:21-cv-00137-GPC-AGS (S.D. Cal) (recent order denying, in part, motion to dismiss class action involving dietary supplements that are illegal to sell under the FDCA, rejecting defendant's preemption arguments);

- *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019) (Finding plaintiffs had standing to sue a dietary supplement distributor and manufacturer that sold illegal dietary ingredients because they were illegal to sell and worthless to plaintiffs);

- *Ulrich v. Probalance, Inc.,* No. 1:16-cv-10488-JLA (N.D. Ill.) (Rejecting Defendant's motion to dismiss argument that the nutrient content claims of a protein supplement were preempted);

- *Porter, et al. v. NBTY, Inc., et al.,* No. 1:15-cv-11459-MSS (N.D. Ill.) (Rejecting Defendant's motion to dismiss and motion for summary judgment arguments that the nutrient content claims of a protein supplement were preempted);

- *Muir v. Nature's Bounty, Inc.,* No. 1:15-cv-09835-RRP (N.D. Ill.) (Rejecting Defendant's motion to dismiss argument that the nutrient content claims of a dietary supplement were preempted);

- *Gubala v. CVS Pharmacy, Inc.,* No. 1:14-cv-09039-TMD (N.D. Ill.) (Finding that plaintiff must show a violation of the FDCA to avoid preemption, rejecting Defendant's preemption arguments);

- ***Gubala, et al. v. HBS International Corp..,*** No. 1:14-cv-09299-SLE (N.D. Ill.) (Rejecting Defendant's motion to dismiss argument that the nutrient content claims of a protein supplement were preempted);

- ***Dabish v. Brand New Energy, LLC,*** No. 3:16-cv-00400-CB (S.D. Ca.) (Rejecting dietary supplement manufacturers primary jurisdiction arguments);

- ***Clay, et al. v. Cytosport, Inc.,*** No. 3:15-cv-00165-L-AGS (S.D. Ca.) (Rejecting Defendant's motion to dismiss and motion for summary judgement arguments that the nutrient content claims and testing methodologies of a protein supplement were preempted);

- ***Gregorio v. Premier Nutrition Corporation,*** No. 1:17-cv-05987-AT (S.D.N.Y.) ($9 million class settlement regarding Defendant's Products' inflated protein content claims);

- ***Clay, et al. v. Cytosport, Inc.,*** No. 3:15-cv-00165-L-AGS (S.D. Ca.) ($12 million class settlement regarding Defendant's Products' inflated protein content claims).

- **Carter, et al. v. General Nutrition Centers, Inc., et al.,** No. 2:16-cv-00633 (W.D. Pa) ($5 million class settlement for purchasers of dietary supplements).

*Id.* ¶ 17.

Prior to his focus on plaintiff's class action work, Mr. Suciu worked several years representing dietary supplement distributors, manufacturers, and retailers, consulting these companies in Good Manufacturing Practices ("GMP"), labeling and marketing, and regulatory issues. *Id.* ¶ 18. Mr. Suciu's unique knowledge and expertise on all aspects regarding the issues which will be presented in this case will create efficient and effective litigation on behalf of the Class Members. *Id.* ¶ 18.

### C.    Plaintiffs' Counsel Is Knowledgeable Regarding the Applicable Law

Proposed interim co-lead counsel are knowledgeable about the law applicable to instant claims, as demonstrated by their experience litigating other multi-state class actions. As set forth above, Plaintiffs' Counsel have a long track record of successfully litigating largescale consumer and complex actions, including cases in this District, and are also familiar with this Court's rules and procedures. Plaintiffs' Counsel are also intimately knowledgeable and experienced in toxic

chemical class actions, such as this case.  Moreover, Bursor & Fisher, Sultzer Law Group, and Milberg operate offices in New York.

### D.    Plaintiffs' Counsel Will Commit the Necessary Resources to Representing the Class

The final Fed. R. Civ. P. 23(g)(1)(C)(i) factor concerns the resources counsel will commit to the case. This factor also strongly supports the appointment of the four firms as co-lead interim class counsel.  Bursor & Fisher, Sultzer Law Group, LSB, and Milberg are not small firms with limited class action practices.  Rather, they are well-established successful law firms that have the resources and personnel necessary to pursue a case of this magnitude, as they have demonstrated in numerous similar class actions.  As a result, the firms can fully utilize their resources and knowledge of local practice to the direct benefit of Plaintiffs and the class members.  Bursor & Fisher, Sultzer Law Group, LSB, and Milberg have already demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case on behalf of members of the proposed class.  The firms' resources are not merely financial, but also include substantial expertise and work-product development in other similar cases which will benefit Plaintiffs' and the putative class.  Bursor & Fisher, Sultzer Law Group, LSB, and Milberg ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Notably, other courts have opined on the resources and commitment of Bursor & Fisher in representing clients in class action cases.  For instance, Chief United States District Judge Morrison C. England, Jr. of the Eastern District of California appointed Bursor & Fisher as interim class counsel in *Melgar v. Zicam, LLC*, No. 2:14-cv-00160-MCE-AC (E.D. Cal. Oct. 29, 2014), noting that the firm "has extensive experience representing plaintiffs in large class actions, both in negotiating settlements and litigating through trial."  Obergfell Decl. ¶ 10 and Ex. B at 3.  Judge England further commented that "Bursor & Fisher is a well-established, reputable firm that is up to handling the challenges of this litigation and is capable of committing the requisite resources to

doing so.  The Court is confident that Bursor & Fisher will fairly and adequately represent the interests of the class."  *Id.* (citation omitted).  Similarly, in appointing Bursor & Fisher an interim class counsel in *Rodriguez v. CitiMortgage*, Case No. 1:11-cv-4718 (PGG) (S.D.N.Y. Nov. 14, 2011), Judge Gardephe recognized that Bursor & Fisher is a "well-established law firm" that "ha[s] the resources and personnel necessary to carry out large-scale class action litigation."  Obergfell Decl. ¶ 11 and Ex. C at 3.

Likewise, judges in this Circuit have recognized The Sultzer Law Group for their exceptional work.  *See Patora v. Tarte, Inc.*, Case No. 18-cv-11760-KMK (S.D.N.Y.), (Judge Kenneth M. Karas stated that "[t]he plaintiff here was ably represented by class counsel, who is clearly well-versed in complex class action litigation.  I can speak from personal experience dealing with The Sultzer Firm, which has many highly-qualified and capable and experienced lawyers representing plaintiffs in consumer class actions"); *see also Shiv Patel v. St. John's University*, Case No. 1:20-cv-02114 (EDNY) (Judge Steven Gold observed that, "The firms' expertise and competency in the class action context are reflected by the favorable outcomes they have obtained in previous suits … particularly in light of their impressive record."); *Griffin, Anthony, et al., v. Aldi, Inc., Doe Defendants 1-10*, Case No. 16-cv-00354 (N.D.N.Y.) (Judge Lawrence E. Kahn stated that "The quality of the representation also supports the award. Plaintiffs' Counsel have worked diligently and are experienced and well-versed in wage and hour cases and class actions."); *Susan Swetz et al v. GSK Consumer Health, Inc.*, Case No. 7:20-cv-04731 (S.D.N.Y.) (Judge Román stated that "Class Counsel have prosecuted the Litigation with skill, perseverance, and diligence, as reflected by the Settlement Fund achieved and the positive reception of the Settlement Agreement by the Settlement Class.").  Sultzer Decl. ¶ 8, Ex. A.

Similarly, judges have commented on the ample resources of LSB.  In the *Lazy Oil Co. v. Witco Corp., et al.*, C.A. No. 94-110E (W.D. Pa.) (Plaintiffs' Co-Lead Counsel) the district court

made the following comments concerning the work of Co-Lead Counsel: "[t]he Court notes that the class was represented by very competent attorneys of national repute as specialists in the area of complex litigation.  As such, Class Counsel brought considerable resources to the Plaintiffs' cause."  LSB also possesses both the financial and human resources necessary to successfully prosecute large-complex cases to trial, and has committed a dedicated team of attorneys and staff to ensure that Plaintiffs efficiently prosecute this litigation to a successful conclusion.  Schaffer Decl. ¶¶ 19, 21.

Milberg, and Mr. Suciu, have been found to be appropriate class counsel in numerous class actions over the years. In 2014, Mr. Suciu was appointed Co-Lead Counsel by the Honorable Edward M. Chen in the United States District Court for the Northern District of *California in Wagner, et. al. v. Driven Sports, et. al.*, Case No. C13-5239. (Illegal compound found in Defendants' product).  In 2016, Mr. Suciu was appointed Co-Lead Counsel by the Honorable Amy St. Eve in the United States District Court for the Northern District of Illinois in *Bordenet, et. al. v. CVS Pharmacy, Inc.*, et. al., Case No. 1:16-cv-06103.  In 2017, Mr. Suciu was also appointed Co-Lead Counsel by the Honorable Harry D. Leinenweber in the United States District Court for the Northern District of Illinois in *Lambert, et. al. v. Dollar General Corporation*, Case No. 1:16-cv-11319. Both cases concerned Defendants' Aloe Gel products allegedly lacking aloe vera.  Mr. Suciu was also appointed Co-Class Counsel by the Honorable Lorna G. Schofield in the United States District Court for the Southern District of New York, Case No. 1:17-cv-00614 and appointed Co-Class Counsel by the Honorable M. James Lorenz in the United States District Court for the Southern District of California, Case No. 3:15-cv-00165, representing a national class of consumers who purchased ready-to-drink and powdered protein products. Mr. Suciu was appointed Co-Class Counsel with an approved Nation Class Settlements of $9,000,000 and $12,000,000 in protein supplement cases. *Gregorio v. Premier Nutrition, Corp.,* 2019 U.S. Dist.

LEXIS 9405 (S.D.N.Y. January 17, 2019); *Clay, et al. v. Cytosport, Inc.,* No. 3:15-cv-00165-L-AGS (S.D. Ca.)

The same is true with respect to this class action.  As interim class counsel, Bursor & Fisher, Sultzer Law Group, LSB, and Milberg will continue to commit the same resources and effort to this case as they have committed to their other, successful class action litigations.  Bursor & Fisher, Sultzer Law Group, LSB, and Milberg have already established a team of attorneys to litigate this matter, ensuring the most organized and efficient representation of the putative class. All four firms will draw on others from within their firm as the case demands.

## **CONCLUSION**

For all these reasons, Plaintiffs respectfully request that this Court appoint Plaintiffs' Counsel as interim co-lead class counsel pursuant to Fed. R. Civ. P. 23(g) to lead this important case.

Dated:  January 24, 2022               Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Andrew J. Obergfell*
Andrew J. Obergfell, Esq.
Max S. Roberts, Esq.
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: aobergfell@bursor.com
       mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, Esq.*
701 Brickell Ave, Suite 1420
Miami FL, 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com

**THE SULTZER LAW GROUP, P.C.**

By: */s/ Jason P. Sultzer*
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
E-Mail: sultzerj@thesultzerlawgroup.com
        liparij@thesultzerlawgroup.com
        markowitzd@thesultzerlawgroup.com

**LEVIN SEDRAN & BERMAN**

By: */s/ Charles E. Schaffer*
David C. Magagna Jr., Esq.*
Charles E. Schaffer, Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: dmagagna@lfsblaw.com
        cschaffer@lfsblaw.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**

By: */s/ Nick Suciu III*
Nick Suciu, III, Esq.*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
Jennifer Czeisler, Esq.*
Virginia Ann Whitener, Esq.*
Russell Busch, Esq.*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com

24

gwhitener@milberg.com
rbusch@milberg.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs*