## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OTTO DELCID, LUZ ROMAN, MINA KALLAMNI, MARY MOLINA, CARLO GARCIA, and ANDREA FAHEY on behalf of themselves and all others similarly situated, | Case No. 1:21-cv-09569-DLC |
| | |
|                      Plaintiffs, | Hon. Denise L. Cote |
| | |
|    v. | |
| | |
| TCP HOT ACQUISITION LLC and IDELLE LABS, LTD, | |
| | |
|                   Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN

Dated:  October 14, 2022

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
E-Mail: sultzerj@thesultzerlawgroup.com
       liparij@thesultzerlawgroup.com
       markowitzd@thesultzerlawgroup.com

**BURSOR & FISHER, P.A.**
Max S. Roberts, Esq.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail:  mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, Esq.**
701 Brickell Avenue, Suite 1420

Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.*
David C. Magagna Jr., Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: dmagagna@lfsblaw.com
         cschaffer@lfsblaw.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu, III, Esq.**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Jennifer Czeisler, Esq.**
Virginia Ann Whitener, Esq.**
Russell Busch, Esq.**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
         gwhitener@milberg.com
         rbusch@milberg.com

**Admitted *Pro Hac Vice*
***Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the
Settlement Class*

## <u>TABLE OF CONTENTS</u>

Table of Contents…………………………………………………………………………..i-ii

Table of Authorities………………………………………………………………...……iii-vi

INTRODUCTION………………………………………………………………………...1

FACTUAL AND PROCEDURAL BACKGROUND…………………………………………....3

I.      THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS…………...…3

II.     SETTLEMENT NEGOTIATIONS……………………………………………...5

III.    THE TERMS OF THE PROPOSED SETTLEMENT……………………………...7

        A.  The Settlement Class…………………………………………………………8

        B.  Relief for the Settlement Class Members……………………………...……8

            1.  *Monetary Relief*………………………………………………………8

            2.  *Injunctive Relief*………………………………………………………9

        C.  The Release…………………………………………………………………9

        D.  Attorneys' Fee, Cost, and Service Award…………………………………9

        E.  Settlement Administration And The Notice Plan……………………………10

ARGUMENT…………………………………………………………………...……12

I.      PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE...…....14

        A.  The *Grinnell* Factors……………………………………………………14

            1.  *The Complexity, Expense, And Likely Duration Of The Litigation* …………14

            2.  *The Reaction Of The Class To The Settlement*……………………………15

            3.  *The Stage of The Proceedings And The Amount of Discovery Completed*…..15

            4.  *The Risks of Establishing Liability And Damages*………………………15

            5.  *The Risk of Maintaining Class Action Status Through Trial*………………16

6.   *The Ability of Defendants To Withstand Greater Judgment*……..…..…………17

7.   *The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation*………………………………………………………………………...…17

B.  The Rule 23(e)(2) Factors……………………………………………………..18

1.   *Class Counsel and Plaintiffs Adequately Represented The Class*……….…....18

2.   *The Settlement Was Negotiated At Arm's-Length*…………………………..…..18

3.   *The Settlement Provides Adequate Relief To The Class*……………………...…18

4.   *The Settlement Treats All Class Members Equally*……………………….…….20

II.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ……………………………………………………………20

A.  The Settlement Class Meets All Prerequisites Of Rule 23(a) Of The Federal Rules Of Civil Procedure……………………………………………………..…20

1.   *Numerosity*…………………………………………………………… ….……...20

2.   *Commonality*……………………………………………………………………...20

3.   *Typicality*……………………………………………………………….…......…21

4.   *Adequacy*………………………………………………………………….…..…..21

B.  The Settlement Class Meets The Requirements Of Rule 23(b)…………………22

1.   *Common Legal And Factual Questions Predominate In This Action*………..…22

2.   *A Class Action Is The Superior Means To Adjudicate Plaintiffs' Claims*……...23

III.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN………..24

CONCLUSION……………………………………………………………………………..25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)..................................................................22, 23

*Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*,
  461 F.3d 219 (2d Cir. 2006)........................................................23

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000).............................................16

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc.*,
  1:22-cv-00291-BMC (E.D.N.Y.)…………………………………………………...3

*Banyai v. Mazur*,
  2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) ..................................16

*Bodon v. Domino's Pizza, LLC*,
  2015 WL 5886656 (E.D.N.Y. Jan. 16, 2015) .................................17

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013)....................................................12, 22

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).........................................................13

*Clark v. Ecolab, Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................19

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)…………………………………………………...16

*D.S. v. New York City Dep't of Educ.*,
  255 F.R.D. 59 (E.D.N.Y. 2008) ....................................................15

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...........................................14

*Fahey v. Helen of Troy Ltd.*,
  Case No. 2:21-cv-14441-DMM (S.D. Fla.) ......................................3

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982)...................................................................16

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .........................................................18, 19, 20

*Hadel v. Gaucho, LLC*,
  2016 U.S. Dist. LEXIS 33085 (S.D.N.Y. Mar. 14, 2016) ........................................12

*Hart v. BHH, LLC*,
  2017 WL 2912519 (S.D.N.Y. July 7, 2017) ...........................................................21

*Hayes v. Harmony Gold Min. Co.*,
  2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21 ....................19

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
  333 F.R.D. 314 (S.D.N.Y. 2019) ............................................................................13

*Kallamni v. Tengram Capital Partners, LLC*,
  1:21-cv-09616 (S.D.N.Y) ........................................................................................4

*Manley v. Midan Rest. Inc.*,
  2016 WL 1274577 (S.D.N.Y. Mar. 30, 2016) ..................................................12, 15

*Marisol A. by Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997).............................................................................20, 22

*McReynolds v. Richards-Cantave*,
  588 F.3d 790, 803 (2d Cir. 2009).............................................................................12

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)...........................................................14, 15, 20, 23

*Mills v. Capital One, N.A.*,
  2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) .......................................................17

*Molina v. HRB Brands, LLC, et al.*,
  No. 2:21-cv-02231-TLN-CKD (E.D. Cal.)................................................................4

*In re Nassau Cty. Strip Search Cases*,
  461 F.3d at 227–28 .................................................................................................23

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) .........................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...................................................................15

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .........................................................13

iv

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................18, 19, 20

*Reyes v. Altamarea Grp.*,
    2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ........................................................................19

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).....................................................................................................21

*In re Sinus Buster Prods. Consumer Litig.*,
    2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014)........................................................................17

*Tart v. Lions Gate Ent. Corp.*,
    2015 WL 5945846 (S.D.N.Y, Oct. 13, 2015) ...................................................................23, 24

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ..............................................................................................24

*Viafara v. MCIZ Corp.*,
    2014 WL 1777438 (S.D.N.Y. Apr. 30, 2014).........................................................................17

*Wal- Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................12, 17, 25

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ......................................................................15

**Statutes**

28 U.S.C. §1715...............................................................................................................................11

Fed. R. Civ. P. 23(a) .......................................................................................................................20

Fed. R. Civ. P. 23(a)(1)...................................................................................................................20

Fed. R. Civ. P. 23(a)(2)...................................................................................................................21

Fed. R. Civ. P. 23(a)(3)...................................................................................................................21

Fed. R. Civ. P. 23(a)(4)...................................................................................................................22

Fed. R. Civ. P. 23(b)(1)..............................................................................................................22, 24

Fed. R. Civ. P. 23(b)(3)...................................................................................................................23

Fed. R. Civ. P. 23(c) .........................................................................................................................3

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................25

Fed. R. Civ. P. 23(c)(3) ......................................................................................................25

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................24

Fed. R. Civ. P. 23(e)(2) ...........................................................................................12, 13, 19

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) .........................................................................................19

Fed. R. Civ. P. 23(e)(3) ............................................................................................13, 19, 20

Fed. R. Civ. P. 23(g) ............................................................................................................4

New York General Business Law §§ 349 and 350 .................................................................3

Plaintiffs Otto Delcid, Luz Roman, Mina Kallamni, Mary Molina, Carlo Garcia, and Andrea Fahey, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, and Approval of Notice Plan.[1] After the hearing on Plaintiffs' initial motion for preliminary approval held on September 29, 2022, the Parties re-negotiated the release encompassed in the proposed settlement taking into consideration all of Your Honor's comments and concerns as detailed below.

## **INTRODUCTION**

This proposed class action settlement would resolve the claims of purchasers of Defendants TCP Hot Acquisition LLC ("TCP") and Idelle Labs, LTD's ("Idelle") (collectively "Defendants") Sure and Brut brand antiperspirant and spray products ("Covered Products").[2]  In the Litigation, Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Covered Products, which Plaintiffs allege Defendants manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold while containing dangerously high levels of benzene.

Defendants have defended the Litigation on several grounds, including, in part, that: (a) Plaintiffs lacked Article III standing; (b) Plaintiffs' claims were preempted; (c) Defendants did not make any express warranties nor did Plaintiffs rely on any warranty; and (d) Plaintiffs failed to

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§ __" are to sections in the Settlement Agreement, submitted as Exhibit 1 to the Declaration of Jason P. Sultzer In Support of Plaintiff's Renewed Motion for Preliminary Approval (the "Sultzer Decl.") and all Settlement Agreement Exhibits are referred to as "Ex [Letter]."

[2] Covered Products include: Brut Classic Antiperspirant Aerosol (4 oz) (UPC 0082775070085); Brut Classic Antiperspirant Aerosol (6 oz) (UPC 000827755070108); Sure Regular Antiperspirant Aerosol (6.0 oz) (UPC 00883484002025); Sure Unscented Antiperspirant Aerosol (6.0 oz) (UPC 00883484002278) (collectively, "Covered Products").

allege Defendants had knowledge that the Covered Products contained benzene. *See* Sultzer Decl. ¶ 11. Nevertheless, Defendants have agreed to enter into this Settlement Agreement to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding in the Litigation. § 1.16.

To settle the Litigation, Defendants will commit to employ commercially reasonable best practices to ensure that Covered Products comply with federal standards and no longer contain benzene and will establish a Settlement Fund of $3.65 million, with no right to reversion, that will compensate Valid Claims, pay costs of notice and claims administration, and pay Court-approved reasonable attorneys' fees and costs and any Court-approved incentive awards to the class representatives. *See* §§ 3.1; 3.15; 4.2.

Additionally, after the Litigation was commenced and after Plaintiffs shared the results of their independent testing that confirmed the presence of benzene in the tested Covered Products, Defendants commenced a nationwide recall of the Covered Products. Sultzer Decl. ¶ 10.

As demonstrated below, the Settlement satisfies the relatively low threshold required for preliminary approval. The parties reached the Settlement after significant arm's-length negotiations with the assistance of a highly respected mediator, Honorable Steven Gold (Ret.). The Settlement provides substantial monetary recovery and injunctive relief, above and beyond what Defendants' voluntary recall provided, while avoiding the additional expenses, risk and uncertainty of continued and protracted litigation.

Accordingly, Plaintiffs respectfully request the entry of an Order: (1) preliminarily approving the proposed Settlement Agreement, including the exhibits attached thereto; (2) preliminarily certifying a proposed national class for settlement purposes only, and appointing Plaintiffs and their Counsel as settlement Class Representatives and Class Counsel; (3) approving the notice plan and forms of notice to the class because they meet the requirements of due process

and is the best notice practicable under the circumstances (*see* Fed. R. Civ. P. 23(c)); and (4) setting dates and procedures for opt outs, objections, and a final approval hearing. It is noteworthy that Judge Cogan recently granted preliminary approval of a class action settlement involving claims for economic loss related to benzene contamination involving very similar issues. *See Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc.*, 1:22-cv-00291-BMC (E.D.N.Y.).

## FACTUAL AND PROCEDURAL BACKGROUND

## I.    THE LITIGATION HISTORY AND PLAINTIFFS' ALLEGATIONS

On November 18, 2021, Plaintiffs Otto Delcid ("Delcid") and Luz Roman ("Roman"), filed a class action complaint in this Court against Unilever United States, Inc. relying *inter alia* on the Valisure Petition,[3] alleging that Brut® and Sure® products sold in the United States were contaminated with benzene, and seeking injunctive relief and compensation for alleged economic losses sustained by U.S. consumer purchasers of the Covered Products. ("Delcid Action").[4]  Dkt. 1.  Plaintiffs asserted claims for breach of express and implied warranty, violation of New York General Business Law ("GBL") §§ 349 and 350, fraud, and unjust enrichment due to the presence of benzene in Brut antiperspirant aerosol and spray products ("*Delcid* Action").  *Id.*  On November 15, 2021, Plaintiff Andrea Fahey ("Fahey") commenced a similar action in the Southern District of Florida alleging similar claims as to Sure products.  *Fahey v. Helen of Troy Ltd.*, Case No. 2:21-cv-14441-DMM (S.D. Fla.).  On November 19, 2021, Plaintiff Mina Kallamni ("Kallamni"), filed a class action complaint against Tengram Capital Partners, LLC asserting similar claims under

---

[3] On November 3, 2021, Valisure LLC ("Valisure"), an analytical pharmacy, filed a citizen's petition (the "Valisure Petition or Report") with the United States Food and Drug Administration ("FDA"). The Valisure Petition stated that Valisure had performed tests on batches of  body spray products from various manufacturers who marketed and sold the products in the United States, and that a significant number of these products contained detectable levels of benzene. VALISURE CITIZEN PETITION ON BENZENE IN BODY SPRAY PRODUCTS, Nov. 3, 2021, https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-3.pdf.

[4] On November 23, 2021, Plaintiffs Delcid and Roman filed a First Amended Complaint naming Helen of Troy Limited and Tengram Capital Partners, LLC as defendants and removing Unilever United States, Inc. as a party. Dkt. 5.

New York GBL and for breach of warranties relating to the presence of benzene in Sure and Brut branded antiperspirant spray products. *See Kallamni v. Tengram Capital Partners, LLC*, 1:21-cv-09616 (S.D.N.Y) ("*Kallamni* Action"). On December 1, 2021, Plaintiffs Mary Molina and Carlo Garcia filed a similar class action in the Eastern District of California. *See Molina v. HRB Brands, LLC, et al.*, No. 2:21-cv-02231-TLN-CKD (E.D. Cal.).

On December 22, 2021, Plaintiffs moved to consolidate the *Delcid* and *Kallamni* Actions and to appoint interim counsel pursuant to Federal Rule of Civil Procedure 23(g). Dkt. 12-13. The Court denied Plaintiffs' motion without prejudice because Defendants had not yet appeared in the case. Dkt. 14. On January 4, 2022, after Defendants filed their notice of appearance, Plaintiffs filed an unopposed motion to consolidate the *Delcid* and *Kallamni* Actions and noted that Plaintiff Fahey intended to dismiss her action and join in the *Delcid* Action. Dkt. 16. The Court granted consolidation. Dkt. 17. Accordingly, Plaintiffs filed their Consolidated Class Action Complaint ("CCAC") adding Plaintiffs Mary Molina, Carlo Garcia, and Andrea Fahey, and naming TCP Hot Acquisition LLC and Idelle Labs, Ltd. as defendants. Dkt. 21. Plaintiffs alleged that Defendants failed to test and improperly marketed and sold several antiperspirants and deodorants that allegedly contained benzene in violation of state law and sought injunctive relief and compensation for alleged economic losses sustained by U.S. consumer purchasers of the products. *Id*. The CCAC alleged violations of New York, California, and Florida consumer protection laws and claims for breach of express and implied warranties, fraud, and unjust enrichment resulting from the presence of benzene in the Sure and Brut branded antiperspirant spray products. *Id.* On the same day, Plaintiffs filed a renewed motion to appoint counsel pursuant to Fed. R. of Civ. P. 23(g). Dkt. 19-20.

After the Litigation was filed and after Plaintiffs shared the independent testing results that confirmed the presence of benzene in the Covered Products, Defendants commenced a nationwide

recall of the Covered Products.  Sultzer Decl. ¶ 10. On February 16, 2022, in an abundance of

caution, Defendants initiated a recall of all lots of the Covered Products produced prior to October

2021.  This recall was directed at distributors, retailers, and customers.  For customers, Defendants

offered a full refund, set at the average purchase price of the product, for up to three products

without providing a substantiating receipt and an unlimited number of products with proof or

substantiation of purchase.  The average retail price plus up to 10% sales tax for the Covered

Products ranged from $3.50 to $4.20.  *Id.* ¶ 10(a).

Defendants filed a motion to dismiss on March 3, 2022 arguing, *inter alia*, that: (a)

Plaintiffs lacked Article III standing; (b) Plaintiffs' claims were preempted; (c) Defendants did not

make any express warranties nor did Plaintiffs rely on any warranty; (d) Plaintiffs failed to allege

a misstatement; and (e) Plaintiffs failed to allege Defendants' had knowledge that the Covered

Products contained benzene.  Dkt. 29-31.  Plaintiffs filed an opposition to the motion to dismiss

on March 24, 2022 (Dkt. 40-41) and Defendants filed a reply on April 14, 2022 (Dkt. 43). On May

24, 2022, the Parties informed the Court that they had reached an agreement to resolve the matter.

Dkt. 44.

## II.   SETTLEMENT NEGOTIATIONS

The Settlement was reached as a result of extensive arm's-length negotiations between the

Parties and counsel, facilitated by a mediation with a respected mediator, the Honorable Judge

Steven Gold (Ret.), on May 23, 2022.   Before and during these settlement discussions and

mediation, the Parties had arm's-length exchange of sufficient information to permit Plaintiffs and

their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed

settlement discussions.   The Parties did not discuss Attorneys' Fees and Costs or any potential

Incentive Award until they first agreed on the substantive terms of this settlement.  Sultzer Decl.

¶ 21; § 1.9.  Defendants deny all of Plaintiffs' allegations and all charges of wrongdoing or liability

5

against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it, in the Litigation.  § 1.11.

Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential early resolution.  Sultzer Decl. ¶ 13.  Indeed, Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources to consolidate the multiple similar litigations without a protracted battle for lead counsel and to lead the case to mediation and an early resolution.  *Id*. ¶ 14.

Class Counsel conducted a detailed and extensive analysis of the claims alleged in the CCAC, including labeling claims for the Covered Products, the relevant FDA regulations concerning labeling and advertising disclosure requirements and for aerosol antiperspirants, FDA guidelines regarding the presence of benzene in consumer products, and the scientific research concerning the dangers of benzene.  *Id*. ¶ 15.  Class Counsel also thoroughly analyzed the Valisure Petition which found that the Covered Products contain as much as 11.1 parts per million of benzene.  *Id*. ¶ 16.  In addition, Class Counsel hired an independent lab to conduct their own testing on certain of the Covered Products for the presence of benzene.  *Id*. ¶ 17.  The independent testing confirmed that those Covered Products contained benzene.  *Id.*  Moreover, Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.  *Id*. ¶ 18.  In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter and marketing and sales trends, practices, and patterns for the relevant industry.  *Id.* ¶ 19.

Based on the Parties' exchange of discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement

negotiations with a private mediator. *Id.* ¶ 20.  In connection with the mediation, Class Counsel requested significant mediation discovery in order to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class. Specifically, Class Counsel requested, and Defendants produced, documents and information regarding the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding contaminants including benzene. *Id*.

The settlement negotiations were conducted at arm's-length over a period of several months. *Id*. ¶ 21.  On May 23, 2022, the Parties participated in an all-day mediation with JAMS mediator Hon. Steven M. Gold (Ret.) via Zoom. *Id*. ¶ 22.  With the assistance of Judge Gold, the Parties reached an agreement in principle at the mediation session.  However, the Parties continued to pursue settlement discussions for several weeks, working out the details of the settlement and culminating in the attached Settlement Agreement, which is the product of hard-fought, arm's-length negotiations. *Id*. ¶ 23.

The Settlement Agreement resolves claims for economic harm regarding Defendants' use of allegedly misleading labels on, and marketing and promotion concerning, the presence of benzene in the Covered Products.  The Settlement Agreement provides significant monetary relief to the Settlement Class Members by way of a Settlement Fund of $3.65 million and meaningful injunctive relief that will implement commercially reasonable best practices to ensure that Covered Products comply with federal standards including screening for benzene and addressing as warranted. These measures did not exist prior to the Valisure Petition and the filing of the complaints in this Litigation.  The Settlement Agreement specifically excludes the release of any claims for personal or bodily injury.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement defines the Settlement Class, describes the Parties' agreed upon

exchange of consideration, and proposes a plan for disseminating notice and administering claims for the Settlement Class Members.  Sultzer Decl., Ex 1.

## A.    The Settlement Class

The Parties agree to certification of a nationwide Settlement Class for settlement purposes, defined as follows:

> All natural persons who, between November 15, 2015 and the date of Preliminary Approval, purchased in the United States any Covered Product for personal, family or household use, and not resale.

§ 2.35.

## B.    Relief for the Settlement Class Members

### 1.    *Monetary Relief*

The Settlement Agreement provides that Defendants will establish a Settlement Fund in the amount of $3.65 million, which will be exhausted to pay all Valid Claims, as well as any Attorneys' Fee, Cost and Incentive Awards, and settlement administration costs that are approved by the Court. §3.1.  Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive the full purchase price for each Covered Product listed on the Proof of Purchase, inclusive of all taxes. § 3.4(a).  Settlement Class Members who submit a Valid Claim Form without Proof of Purchase shall receive the average retail price for up to five (5) Covered Products claimed per household plus a 10% allowance for sales tax, as such price is determined in good faith by the Defendants and provided to the Claim Administrator. § 3.4(b). Settlement Class Members who obtained a refund from the Recall may be able to receive further relief from the settlement. If a Settlement Class Member submitted a claim in the Recall, the amount of that Settlement Class Member's payment shall be reduced by the amount each Settlement Class Member has received or shall receive from the Recall (provided that the payment shall not be reduced below $0.00).  § 3.4(c).

Each Settlement Class Members' payment shall be increased or decreased on a *pro rata*

basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds.  § 3.5.  In the event any checks issued to pay Valid Claims are uncashed or not redeemed for 120 days, such funds shall be donated to BBB National Programs.  § 3.15.  All of this ensures that *no settlement funds* will revert to Defendants.

2.    *Injunctive Relief*

The Settlement Agreement provides meaningful injunctive relief that relates to the core claims in the Litigation.  Specifically, Defendants have agreed that, for not less than eighteen (18) months following the date of Preliminary Approval, they will employ commercially reasonably best practices to ensure that Covered Products comply with federal standards relating to the presence of Benzene.  Such practices will include screening for benzene and addressing any detectable benzene as warranted.  § 4.2.  This includes measures that did not exist prior to the Valisure Petition and the filing of the complaints in this Litigation. The relief was obtained after extensive negotiations before Judge Gold.

### C.    The Release

The Settlement Agreement provides that upon the Effective Date, Settlement Class Members shall forever release Defendants from any and all claims for economic injury related to the presence of benzene in the Covered Products that were, or could have been asserted, in this Litigation and any economic harm resulting from any acts, omissions or misrepresentations concerning the presence of benzene in the Covered Products.  § 8.3(a).  In order to address one of Your Honor's concerns at the hearing, the Settlement Agreement expressly excludes any claims for personal and/or bodily injuries and explains that Settlement Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to bodily injuries allegedly caused by the Covered Products. § 8.1.

### D.    Attorneys' Fee, Cost, and Service Award

9

Prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award of their Attorneys' Fees and Costs in a total amount not to exceed one-third of the Settlement Fund, to which Defendants retain the right to object. § 6.1. In addition, prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, the Class Representatives may apply to the Court for an incentive award from Defendants of up to $500 each as compensation for (a) the time and effort undertaken in and risks of pursuing this Litigation. § 6.2. Defendants will have an opportunity to object to the application should they so desire.

**E.     Settlement Administration And The Notice Plan**

The Settlement Agreement seeks appointment of Angeion Group ("Angeion") as the Claim Administrator to effectuate and administer the Notice Plan.  *See* § 2.5.  Before selecting Angeion, Plaintiffs sought multiple bids from claims administrators and interviewed and vetted Angeion and its proposed notice plan for this settlement.  Sultzer Decl. ¶ 26.  The Parties selected Angeion based on its reputation for excellent work and breadth of experience administering other similar consumer class actions.  *Id*. ¶ 27.

The Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses for Class Counsel; the Consolidated Class Action Complaint; the Agreement; the signed order of Preliminary Approval; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when it becomes available) Plaintiffs' application for Attorneys' Fees and Costs and application for incentive awards. § 5.1; Ex. B.

Angeion, with the assistance of the Parties, developed the Notice Plan, which includes: (1) Notice of Settlement and Claim Form sent by electronic mail if an e-mail address is available or; (2) digital/internet publication designed to target purchasers of the Covered Products; (3) a dedicated Settlement Website though which Settlement Class Members can obtain more detailed information about the Settlement and access case documents; (4) a toll-free telephone number through which Settlement Class Members can obtain additional information about the Settlement and directs them to the Settlement Website; and (5) all required notices in accordance with Defendants' obligations pursuant to 28 U.S.C. §1715. *See* Exs. B, B1, B2.

Angeion analyzed the demographic and media usage of potential Settlement Class Members to ensure the notice effectively targets the Settlement Class. *See* Ex. B ¶¶ 13, 18-26. Specifically, Angeion designed a media campaign that is estimated to reach at least 75% of potential Settlement Class members. *Id.* ¶¶ 13, 34; FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) (explaining a proposed notice plan should "reach between 70-95%" of class members). The media campaign will consist of a digital effort utilizing a form of internet advertising known as Programmatic Display Advertising, which is the leading method of buying digital advertisements in the United States, to provide notice of the Settlement to Class Members. *Id.* ¶¶ 18-26. The media plan will also include a campaign on the top social media sites (Facebook and Instagram) and a paid search campaign on Google. *Id.* ¶¶ 27-30. The digital effort utilizes best practices in targeting the Settlement Class and will directly link users to the Settlement Website where they can access more information, as well as file an online claim. *Id.* ¶ 31. In addition to the digital effort, direct notice by email to any known Settlement Class Members will extend notice exposure further. *Id.* ¶¶ 15-17.

11

## ARGUMENT

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only … on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013).[5]   The Second Circuit has recognized a "strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*")). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Visa*, 396 F.3d at 117; *see also Hadel v. Gaucho, LLC*, 2016 U.S. Dist. LEXIS 33085, at *4 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere.").   A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)).

"Preliminary approval is the first step in the settlement of a class action whereby the court must preliminarily determine whether notice of the proposed settlement [] should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement." *Manley v. Midan Rest. Inc.*, 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016).  "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its

---

[5] All internal citations and quotations omitted unless otherwise noted.

fairness." *Id.* "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Id.*

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether:

> (A) the class representatives and class counsel have adequately represented the class;  (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23(e)(2) factors significantly overlap or implicate the *Grinnell* factors, and the Rule 23(e)(2) factors do not displace the *Grinnell* factors. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019).

I.     **PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

  A.     **The *Grinnell* Factors**

          *1.     The Complexity, Expense, And Likely Duration Of The Litigation*

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger

the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663

(S.D.N.Y. 2015).  Consumer class action lawsuits by their very nature are complex, expensive,

and lengthy.  *See*, *e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y.

2010).  Should the Court decline to approve the proposed settlement and litigation were to resume,

it would be costly, complex, and time-consuming.  There would undoubtedly be a contested class

certification motion, and Defendants would likely dispute that damages could be calculated on a

class-wide basis and whether individual purchasing decisions were relevant and/or would

predominate over class wide issues.  Class issues involving damages would likely generate expert

discovery and *Daubert* motions.  Although Plaintiffs are confident in their ultimate success in

certifying a class, a positive ruling would no doubt be challenged by a decertification motion and/or

an appeal.  Plaintiffs expect there would likely be a lengthy and expensive battle of the experts

about whether there are any safe levels of benzene; whether a reasonable consumer would expect

the Covered Products to be free from benzene; whether all the Covered Products contained

benzene; the reliability of competing damages models, as well as the reliability of consumer

surveys and statistical analysis employed to derive the price premium consumers paid for each

falsely advertised product attribute.  Each step towards trial would be subject to Defendants'

vigorous opposition and possible interlocutory appeal. Even if the case were to proceed to

judgment on the merits, any final judgment would likely be appealed, which would take significant

time and resources.

       Moreover, Defendants would be expected to offer substantial defenses at trial concerning

the Defendants' lack of knowledge regarding the presence of benzene in the Covered Products.

Although Plaintiffs believe they would ultimately prevail, "litigation of this matter … through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at \*9. "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.*  For all of these reasons, this factor weighs strongly in favor of preliminary approval.

2.        *The Reaction Of The Class To The Settlement*

It is premature to address the reaction of the Settlement Class at the preliminary approval stage.  *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at \*2 (S.D.N.Y. Nov. 20, 2008).

3.        *The Stage of The Proceedings And The Amount of Discovery Completed*

The third *Grinnell* factor considers "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013).  As set forth above, Class Counsel have conducted significant informal discovery related to Plaintiffs' claims, including extensive sales, distribution and marketing information regarding the Covered Products, and the technical scientific information pertaining to the manufacturing process and suppliers regarding the sources and reasons for the benzene contamination.  Sultzer Decl. ¶ 20.  This is largely the information that Class Counsel would have reviewed had the matter proceeded to formal discovery.  *Id.*  In addition, Class Counsel also had access to the Valisure Petition and conducted their own testing of the products both of which confirmed contamination with benzene.  Thus, Plaintiffs had sufficient information to evaluate the claims of the class.  *See D.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 77 (E.D.N.Y. 2008) ("The amount of discovery undertaken has provided plaintiffs' counsel 'sufficient information to act intelligently on behalf of the class in reaching a settlement.").

4.        *The Risks of Establishing Liability And Damages*

15

"[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007). In weighing the risks of certifying a class and establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Plaintiffs recognize that, as with any litigation, uncertainties exist. Defendants continue to deny Plaintiffs' allegations, and should this matter proceed, Plaintiffs expect Defendants will vigorously defend themselves on the merits, at each stage of litigation and likely on appeal. Most fundamentally, while Plaintiffs believe a reasonable consumer would be misled by the failure to disclose that the Covered Products contain benzene, a jury might not agree. In addition, Plaintiffs anticipate a zealous "battle of the experts" with respect to benzene levels and the calculations of damages. For these reasons, although Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages at trial and on appeal strongly support preliminary approval.

### 5. *The Risk of Maintaining Class Action Status Through Trial*

The Litigation settled before rulings on class certification, and the current certification is for settlement purposes only. § 1.17. As discussed above, in addition to the challenges inherent in certifying a potential national class, Plaintiffs must proffer a suitable mechanism for calculating damages in the form a class-wide price premium. While Plaintiffs believe they could establish the existence of such a premium to the Court's satisfaction, this proposed settlement eliminates the unavoidable risk that they cannot. Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Given the risks, this factor weighs in favor

of final approval.  *See*, *e.g.*, *Mills v. Capital One, N.A.*, 2015 WL 5730008, at *14 (S.D.N.Y. Sept. 30, 2015) ("[V]ictory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position.").

### 6.  The Ability of Defendants To Withstand Greater Judgment

"Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014).  Thus, Defendants' "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014).  Therefore, at worst, this factor is neutral.

### 7.  The Range of Reasonableness of The Settlement In Light of The Best Possible Recovery And In Light of All The Attendant Risks of Litigation

"There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa*, 396 F.3d at 119. "In other words, the question for the Court is not whether the settlement represents the highest recovery possible … but whether it represents a reasonable one in light of the many uncertainties the class faces." *Bodon v. Domino's Pizza, LLC*, 2015 WL 5886656, at *6 (E.D.N.Y. Jan. 16, 2015).  Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation.  The gravamen of the Litigation is that Defendant is deceiving consumers by failing to disclose that the Covered Products contain benzene.  The injunctive relief provided under the Settlement Agreement—*i.e.*, the commitment to implement commercially reasonable best practices to ensure that Covered Products comply with federal standards, including screening for benzene and addressing any detectable benzene as warranted—is within the range of reasonableness when

17

weighed against the risks of the case.  It promotes health and safety of consumers and raises the floor of truth telling in advertising by elevating the customary standard of practice across the industry, and ensures fidelity to consumer protection laws that benefits consumers, the public, and the market.  Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled is significant relative to the purchase prices.  The substantial relief afforded strongly supports preliminary approval.

### B.   The Rule 23(e)(2) Factors

#### 1.   *Class Counsel and Plaintiffs Adequately Represented The Class*

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019).  As discussed below, Plaintiffs and Class Counsel have adequately represented the Class.  Argument IV.A.4, *infra*.

#### 2.   *The Settlement Was Negotiated At Arm's-Length*

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).  "Further, a mediator's involvement in settlement negotiations can help demonstrate their fairness."  *Id*.  Here, both Class Counsel and counsel for Defendants are experienced in class action litigation.  Sultzer Decl. ¶ 29.  Moreover, the parties participated in a mediation before Judge Gold and engaged in protracted settlement discussions.  *Id*. ¶¶ 22-23.

#### 3.   *The Settlement Provides Adequate Relief To The Class*

Whether relief is adequate considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method

of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

As to "the costs, risks, and delay of trial and appeal," this factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 36. The Settlement has met each of these *Grinnell* factors. Argument I.A.

As to "the effectiveness of any proposed method of distributing relief to the class," the Notice Plan outlined below was proposed by experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 695; *see also* Argument III.

As to "the terms of any proposed award of attorney's fees," Plaintiffs' Counsel will apply for attorneys' fees "not to exceed one-third of the Settlement Fund." § 6.1. Courts in this Circuit routinely approve fee requests for one-third of a common fund. *See, e.g.*, *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), *aff'd*, 509 F. App'x 21, 23-24 (2d Cir. 2013; *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010). As courts in this Circuit have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements." *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011).

As to "any agreement required to be identified by Rule 23(e)(3)" or "any agreement made in connection with the proposal," *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696, no such agreement exists in this case other than the Settlement.

19

#### 4. *The Settlement Treats All Class Members Equally*

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 47. The Settlement distributes relief on a *pro rata* basis, which has been found by courts in this Circuit to be equitable. *Id.*; *see also Meredith Corp.*, 87 F. Supp. at 667 (a *pro rata* distribution plan "appears to treat the class members equitably").

## II. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

As Plaintiffs set forth below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A. The Settlement Class Meets All Prerequisites Of Rule 23(a) Of The Federal Rules Of Civil Procedure

The Settlement Class meets each prerequisite of Rule 23(a) which include: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. Fed. R. Civ. P. 23(a).

#### 1. *Numerosity*

Under Rule 23(a)(1), plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit has found numerosity met where a proposed class is "obviously numerous." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Here, there is no dispute that hundreds of thousands of people nationwide purchased the Covered Products during the proposed class period. Numerosity is easily satisfied.

#### 2. *Commonality*

Under Fed. R. Civ. P. 23(a)(2), plaintiffs must show that "questions of law or fact common

to the [proposed] class" exist.  Commonality requires that the proposed class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.  Here, common questions include, but are not limited to, whether Defendants' failure to disclose that the Covered Products contained benzene was likely to deceive reasonable consumers.  Resolution of this common question would require evaluation of the question's merits under a single objective standard, i.e., the "reasonable consumer" test.  *Hart v. BHH, LLC*, 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017) (commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller, and suffered the same economic harm.").  Thus, commonality is satisfied.

### 3.    Typicality

Fed. R. Civ. P. 23(a)(3) requires that the proposed class representatives' claims "are typical of the [class's] claims."  Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013).  Here, typicality is met because the same allegedly unlawful conduct by Defendants was directed at, or affected, Plaintiffs and Settlement Class Members. *Robidoux*, 987 F.2d at 936-37.

### 4.    Adequacy

Under Fed. R. Civ. P. 23(a)(4), Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class."  Plaintiffs must demonstrate that: (1)

the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378.

To satisfy the first requirement, Plaintiffs must show that "the members of the class possess the same interests" and that "no fundamental conflicts exist" between the class representatives and class members. *Charron*, 731 F.3d at 249. Here, Plaintiffs possess the same interests as the proposed Settlement Class Members because Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly misleading conduct concerning the Covered Products.

With respect to the second requirement, Class Counsel are qualified, experienced, and generally able to conduct the Litigation. Class Counsel have invested considerable time and resources into the prosecution of the Litigation and possess a long and proven track record of the successful prosecution of class actions, including false advertising cases, and numerous appointments as class counsel. *See* Sultzer Decl. ¶¶ 29-30, Exs. 2-5.

## B.      The Settlement Class Meets The Requirements Of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.      *Common Legal And Factual Questions Predominate In This Action*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The

Second Circuit has held that "to meet the predominance requirement … a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219, 227-28 (2d Cir. 2006).  In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial."  *Id.* at 620.  As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context."  *Tart v. Lions Gate Ent. Corp.*, 2015 WL 5945846, at *4 (S.D.N.Y, Oct. 13, 2015).  Consumer fraud cases readily satisfy the predominance inquiry.  *See Amchem Prods.*, 521 U.S. at 625.

Here, for settlement purposes, the central common questions predominate over any questions that may affect individual Settlement Class Members.  The central common questions include whether Defendants' failure to disclose the presence of benzene in the Covered Products was likely to deceive reasonable consumers and whether the omissions were material.  These issues are subject to "generalized proof" and "outweigh those issues that are subject to individualized proof."  *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28.

### 2.    *A Class Action Is The Superior Means To Adjudicate Plaintiffs' Claims*

Fed. R. Civ. P. 23(b)(3) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Here, the class action mechanism is superior to individual actions for numerous reasons.  *First*, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions."  *Meredith Corp.*, 87 F. Supp. 3d at 661. *Second*, a class action is superior because the "small recoveries" at stake here likely "do not

provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Tart*, 2015 WL 5945846, at \*5. *Finally*, a class action will conserve judicial resources because "rather than individually settling [thousands of] lawsuits, the proposed Settlement allows for the named Plaintiffs, class members, and Defendants to resolve all claims … at once." *Id*. For all of the foregoing reasons, a class action is superior to individual suits.

## III.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113. Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014).

Here, the robust proposed Notice Plan meets the requirements of due process and the Federal Rules of Civil Procedure. The proposed methods Plaintiff identified above for providing notice to the Settlement Class members are reasonable, designed to reach 75% of the Settlement Class, and utilize the best practicable and economically efficient means to notify consumers of the proposed Settlement. *See* Ex. B, ¶ 13; JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) ("It is reasonable to reach between 70-95%."). Direct notice through email will go to consumers readily identifiable. *See* Ex. B, ¶¶ 15-17. A digital advertising campaign targeting consumers of the Covered Products will be used to drive them to the Settlement Website. *Id.* ¶¶ 18-30.

24

Substantively, Rule 23(c)(2)(B) requires, and the Notices of Settlement provides, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who request exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Visa*, 396 F.3d at 114. The Notices of Settlement define the Settlement Class; explain all Settlement Class Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and they describe in detail the injunctive and monetary relief of the Settlement, including the procedures for allocating and distributing the Settlement Fund amongst the Settlement Class Members, Plaintiffs, Class Counsel, and the Settlement Administrator.  Exs. B1, B2.  They also plainly indicate the time and place of the Final Approval, and explain the methods for objecting to, or opting out of, the settlement.  *Id.*  They detail the provisions for payment of Attorneys' Fees, Costs and Service Awards, and they provide contact information for Class Counsel.  *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class and appoint Plaintiffs as the class representatives and their counsel as Class Counsel; (2) preliminarily approve the Settlement Agreement; (3) approve the Notice Plan; and (4) set a date and time for the Final Approval Hearing.

Dated: October 19, 2022                    Respectfully submitted,

                                           By: */s/ Jason P. Sultzer*
                                                   Jason P. Sultzer

                                           **THE SULTZER LAW GROUP P.C.**
                                           Jason P. Sultzer, Esq.
                                           Joseph Lipari, Esq.
                                           Daniel Markowitz, Esq.
                                           85 Civic Center Plaza, Suite 200
                                           Poughkeepsie, NY 12061
                                           Tel: (845) 483-7100
                                           Fax: (888) 749-7747
                                           E-Mail: sultzerj@thesultzerlawgroup.com
                                                   liparij@thesultzerlawgroup.com
                                                   markowitzd@thesultzerlawgroup.com

                                           **BURSOR & FISHER, P.A.**
                                           Max S. Roberts, Esq.
                                           888 Seventh Avenue
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile:  (212) 989-9163
                                           E-Mail: mroberts@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Sarah N. Westcot, Esq.*
                                           701 Brickell Avenue, Suite 1420
                                           Miami, FL 33131
                                           Tel: (305) 330-5512
                                           Fax: (305) 676-9006
                                           E-Mail: swestcot@bursor.com

                                           **LEVIN SEDRAN & BERMAN**
                                           Charles E. Schaffer, Esq.*
                                           David C. Magagna Jr., Esq.*
                                           510 Walnut Street, Suite 500
                                           Philadelphia, PA 19106
                                           Tel: 215-592-1500
                                           E-Mail: dmagagna@lfsblaw.com
                                                   cschaffer@lfsblaw.com

                                           **MILBERG COLEMAN BRYSON
                                           PHILLIPS GROSSMAN PLLC**
                                           Nick Suciu, III, Esq.*
                                           6905 Telegraph Rd., Suite 115
                                           Bloomfield Hills, MI 48301

Tel: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Jennifer Czeisler, Esq.*
Virginia Ann Whitener, Esq.*
Russell Busch, Esq.*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
        gwhitener@milberg.com
        rbusch@milberg.com

*Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the Settlement Class*