## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OTTO DELCID, LUZ ROMAN, MINA KALLAMNI, MARY MOLINA, CARLO GARCIA, and ANDREA FAHEY on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TCP HOT ACQUISITION LLC and IDELLE LABS, LTD,<br><br>Defendants. | Case No. 1:21-cv-09569-DLC<br><br>Hon. Denise L. Cote |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated:  March 8, 2023

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Philip J. Furia, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
E-Mail: sultzerj@thesultzerlawgroup.com
        furiap@thesultzerlawgroup.com
        dolgoffm@thesultzerlawgroup.com

**BURSOR & FISHER, P.A.**
Max S. Roberts, Esq.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail:  mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, Esq.*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.*
David C. Magagna Jr., Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: dmagagna@lfsblaw.com
        cschaffer@lfsblaw.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu, III, Esq.**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Jennifer Czeisler, Esq.**
Virginia Ann Whitener, Esq.**
Russell Busch, Esq.**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
        gwhitener@milberg.com
        rbusch@milberg.com

**Admitted *Pro Hac Vice*
***Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the
Settlement Class*

## <u>TABLE OF CONTENTS</u>

Table of Contents…………………………………………………………………..i-ii

Table of Authorities……………………………………………………………...iii-vi

I.     INTRODUCTION……………………………………………………1

II.    BACKGROUND…………………………………………………...4

    A.  The Litigation History And Plaintiffs' Allegations………………………4

    B.  Settlement Negotiations…………………………………………...7

    C.  Preliminary Approval And The Fairness Process…………………………8

III.   ARGUMENT………………………………………………………8

    A.  Legal Standard…………………………………………………8

    B.  Judicial Policy Strongly Favors Settlement………………………………9

    C.  The Proposed Settlement is Procedurally Fair……………………………...10

        i.    Rule 23(e)(2)(A) – Plaintiffs And Class Counsel Have Adequately Represented The Class…………………………………………...10

        ii.   Rule 23(e)(2)(B) – The Settlement Was Negotiated At Arm's-Length……………………………………………………13

    D.  The Proposed Settlement Is Substantively Fair……………………………13

        i.    Rule 23(e)(2)(C)(i) – The Relief Provided To The Class Is Superior To Continued Litigation……………………………………………14

            1.  *Settlement Avoids Significant Costs and Risks in Establishing Liability and Damages, Maintaining the Class Through Trial and on Appeal, and the Lenghty Delays of this Process*………………14

            2.  *The Recovery Is Reasonable Considering The Best Possible Recovery And Attendant Risks of Litigation*………………………16

            3.  *While Defendants May Be Able To Sustain A Larger Judgment, That Factor Alone Does Not Undermine Final Approval*……………19

i

4.  *The Stage of Litigation And Discovery Completed Favors Approval*……………………………………………………....…19

ii.   Rule 23(e)(2)(C)(ii) – The Claims Process Is Fair And Rational………..20

iii.   Rule 23(2)(C)(iii) – The Proposed Award of Attorneys' Fees Supports Final Approval………………………………………………....22

iv.   Rule 23(e)(2)(D) – The Settlement Treats Class Members Equitably Relative To One Another……………………………………………...22

D.  NOTICE ADEQUATELY APPRISED CLASS MEMBERS OF THEIR RIGHTS……………………………………………………………………23

E.  THE REACTION OF THE SETTLEMENT CLASS FAVORS APPROVAL…25

CONCLUSION…………………………………………………………………………26

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775 (JG)(VVP),
2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) .........................................................................12

*In re Apple Computer Sec. Litig.*,
No. C-84-20148(A)-JW,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .........................................................................16

*Banyai v. Mazur*,
No. 00-cv-9806,
2007 WL 927583 (S.D.N.Y. Mar. 27, 2007) .......................................................................14

*Castagna v. Madison Square Garden, L.P.*,
No. 09-cv-10211,
2011 WL 2208614 (S.D.N.Y. Jun. 7, 2011) ........................................................................19

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)....................................................................................9, 10, 17, 25

*City of Providence v. Aéropostale, Inc.*,
No. 11 Civ. 7132 (CM),
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................................16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).......................................................................................................12

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)......................................................................................................11

*In re Drexel Burnham Lambert Grp., Inc.*,
995 F.2d 1138 (2d. Cir. 1993)................................................................................................23

*Dupler v. Costco Wholesale Corp.*,
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................................14, 15

*Fleisher v. Phoenix Life Ins. Co.*,
No. 11-CV-8405 (CM),
2015 WL 10847814 (S.D.N.Y. Sep. 9, 2015)......................................................................16

*Free Range Content, Inc. v. Google, LLC*,
No. 14-CV-02329-BLF,
2019 WL 1299504 (N.D. Cal. Mar. 21, 2019).....................................................................24

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................13

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
328 F.R.D. 35 (W.D.N.Y. 2018)......................................................................9

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)..............................................................13

*In re GSE Bonds Antitrust Litigation*,
No. 19-cv-1704,
2020 WL 3250593 (Slip Op.) (S.D.N.Y. June 16, 2020) .........................................9

*Handschu v. Special Services Div.*,
787 F.2d 828 (2d Cir. 1986).........................................................................24

*Katz v. ABP Corp.*,
2014 WL 4966052 (E.D.N.Y. Oct. 3, 2014).......................................................24

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018) ...................................................................17

*Malev v. Del Global Techs. Corp.*,
186 F. Supp. 2D 358 (S.D.N.Y. 2002)...........................................................16, 25

*Melito v. Am. Eagle Outfitters, Inc.*,
No. 14-CV-2440 (VEC),
2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017)…………………………………………...11, 23

*Melito v. Experian Mktg. Sols., Inc.*,
923 F.3d 85 (2d Cir. 2019)..........................................................................11

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)...............................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................15

*In re Payment Card*
330 F.R.D. 11, 34-35 (E.D.N.Y. 2019)…………………………………………………13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
No. 05MD1720MKBJO,
2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) .................................................10, 25

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*,
No. 94-cv-5587,
2003 WL 21136726 (S.D.N.Y. May 15, 2003) ....................................................25

*Schneider v. Chipotle Mexican Grill, Inc.*,
    2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ........................................................24

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 CIV. 7961 CM,
    2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014) ......................................................13

*Springer v. Code Rebel Corp.*,
    No. 16-cv-3492,
    2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) .........................................................9

*In re SunEdison, Inc.*,
    329 F.R.D. 124 (S.D.N.Y. 2019) ...........................................................................11

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC) (JO),
    2012 WL 5289514 (E.D.N.Y. Oct. 22, 2012) .......................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).........................................................................9, 23, 25

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d. Cir. 2004)..................................................................................19

*In re WorldCom Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................20

**Statutes**

Fed R. Civ. P. 23, 2018..................................................................................................22

Federal Rule Civil Procedure 23(e) ..........................................................................8, 9

Rule 23 ............................................................................................................... *passim*

Rule 23(2)(C)(iii) ..........................................................................................................22

Rule 23(a) and (b) ............................................................................................................9

Rule 23(e)(2) ............................................................................................................9, 10

Rule 23(e)(2)(A) ...........................................................................................................10

Rule 23(e)(2)(B) ...........................................................................................................13

Rule 23(e)(2)(C)(i).........................................................................................................14

Rule 23(e)(2)(C)(ii)........................................................................................................20

Rule 23(e)(2)(D) ........................................................................................................................22

Rule 23(e)(3) ....................................................................................................................10, 22

## I.      INTRODUCTION

In this matter, Plaintiffs allege that various products manufactured by Defendants contained Benzene.  After hard-fought, arms-length settlement discussions, including a mediation before former Magistrate Judge Steven Gold (who has significant expertise in these matters),[1] the parties entered into an agreement to settle this case on May 23, 2022.  This Court granted preliminary approval of the parties' class-wide settlement on October 28, 2022.  Plaintiffs are now proud to report that following preliminary approval, class notice has been successfully implemented and the class response to this settlement has been overwhelmingly positive.  Over 328,000 class members submitted a claim, not one has voiced an objection to any terms of the settlement or counsel's request for attorney fees and expenses, and only ten exclusions have been recieved.  Angeion Decl. ¶¶ 18, 22-23; Sultzer Decl. ¶¶ 4-5.  As a result of this settlement, consumers have the opportunity to receive cash payments[2] and each class member will receive the full purchase price of nearly two Covered Products, with others class members receiving the full purchase price of multiple products.   Angeion Decl. ¶¶ 18, 22-23; Sultzer Decl. ¶ 6.  An outcome of this magnitude is extremely rare in the class action context.  Indeed, it is unlikely such a recovery would be possible even if the matter was successfully tried before a jury,

In addition to the lack of a single objection, which is a key factor for the Court to consider in evaluating its decision as to whether to grant final approval, other significant factors dictate that this Court should grant final approval of this settlement. Beyond the significant monetary relief already obtained on behalf of the class as described above, after Plaintiffs' institution of this

---

[1] For example, in a similar consumer benzene case, at the final approval hearing, the Honorable Brian M. Cogan noted: "I think that the fact that Judge Gold was involved is, itself, an unusual guarantee of fairness here because he is very adept at these things. He has negotiated more settlements of these kinds of cases than I ever have or ever will[]. " *See Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.) final approval transcript at p. 8-9.

[2] The Settlement Agreement provides that Defendants will establish a Settlement Fund in the amount of $3.65 million, which will be exhausted to pay all Valid Claims.

1

lawsuit and the independent expert testing conducted by Plaintiffs' counsel confirming the presence of benzene in the products, Defendants commenced a nationwide recall of the Covered Products.[3] Sultzer Decl. ¶ 14.  Through disclosures from Defendant, Plaintiffs have confirmed that, as a result of the voluntary refund program, 9,512 United States-based consumers have received refund checks totaling $134,998.96. In addition, Plaintiffs obtained valuable injunctive relief whereby Defendants agreed that the Covered Products will be screened for benzene moving forward.[4]

Two recent decisions granting final approval in similar benzene cases also support final approval of this settlement and underscore the value of Plaintiffs early settlement of this action. *First*, in the similar Coppertone benzene litigation, the Honorable Brian M. Cogan of the Eastern District of New York recently lauded counsel's efforts for procuring an early settlement:

> "I think there is definitely a premium to be taken for the fact that the case was settled at an early stage. It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts."

*Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.) Final Approval Hearing Transcript at 9.; *see also In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (Cote, J) ("Any award of attorneys' fees therefore should

---

[3] 10 oz included in covered products?

[4] "§ 4.2 ("Defendants shall, for not less than eighteen (18) months following the date of Preliminary Approval, employ commercially reasonably best practices to ensure that Covered Products comply with federal standards and regulations relating to the presence of Benzene. Such practices will include screening for benzene and addressing any detectable benzene as warranted"). Defendants were not previously testing for benzene. See preliminary approval transcript at pg. 14.

recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so.)[5]

*Second*, Plaintiffs call the Court's attention to a similar benzene case where final approval of a settlement was granted. *See In Re: Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and Products Liability Litigation* (hereinafter "*J&J*"), Case 0:21-md-03015-AHS (S.D. Fla.) (ECF Doc. 95, entered 2/28/23) (Granting final approval of a similar benzene settlement and overruling an objection raised). *J&J* is noteworthy because it overcame a detailed objection to the settlement. *See J&J* (ECF Doc. 83). In granting final approval, the J&J Court noted the significant value of the injunctive relief and the fact that it was the best settlement available. J&J ECF Doc 95 at 25, 29. From a value creation perspective, Plaintiffs settlement here is even stronger on behalf of the Settlement Class than *J&J* because (i) the Settlement here is a common fund that will ensure no reversion to Defendants; (ii) Plaintiffs' settlement creates significant cash benefits to Settlement Class Members independently and above and beyond the benefits paid out in the recall;[6] and (iii) the significant injunctive relief obtained. *See J&J* at ECF Doc. 82-1, ¶¶ 45-49.

Against this backdrop, Plaintiffs respectfully request that this Court grant final approval of the settlement, for the reasons detailed herein.

---

[5] The Settlement in this case had an even stronger reaction from the Class than the Coppertane settlement Judge Cogan approved because this case has only ten exclusion requests compared to 47 in *Bangoura*. *See Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.) (ECF Doc. 40 at ¶ 5. )

[6] In *J&J*, the cash provided to consumers was from the Defendant's recall itself. In addition, the attorneys in the case placed significant value on the injunctive relief. *See J&J* at ECF Doc. 82-1, ¶¶ 45-49. Here, Plaintiffs have not placed a value on the injunctive relief component of their settlement and they have significantly enhanced Defendants' recall. As noted above 9,512 consumers submitted claims in Defendants' own recall while over 328,000 claims have been submitted for benefits in this settlement. So while *J&J* relies on the recall for cash, Plaintiffs here have significantly expanded the scope of those receiving benefits.

## II.    BACKGROUND

This class action settlement resolves the claims of purchasers of Defendants TCP Hot Acquisition LLC ("TCP") and Idelle Labs, LTD's ("Idelle") (collectively "Defendants") Sure and Brut brand antiperspirant and spray products ("Covered Products").[7]   In the Litigation, Plaintiffs asserted claims seeking to recover economic damages individually and on behalf of a nationwide class of purchasers of the Covered Products, which Plaintiffs allege Defendants manufactured and distributed and were deceptively and misleadingly marketed, advertised, labeled, and sold while containing dangerously high levels of benzene.

### A.    The Litigation History And Plaintiffs' Allegations

On November 18, 2021, Plaintiffs Otto Delcid ("Delcid") and Luz Roman ("Roman"), filed a class action complaint in this Court against Unilever United States, Inc. relying *inter alia* on the Valisure Petition and their own independent testing,[8] alleging that Brut products sold in the United States were contaminated with benzene, and seeking injunctive relief and compensation for alleged economic losses sustained by U.S. consumer purchasers of the Covered Products. ("*Delcid Action*").[9] Dkt. 1. Plaintiffs asserted claims for breach of express and implied warranty, violation

---

[7] Covered Products include Brut Classic Antiperspirant Aerosol (4 oz) (UPC 00827755070085); Brut Classic Antiperspirant Aerosol (6 oz) (UPC 000827755070108); Sure Regular Antiperspirant Aerosol (6.0 oz) (UPC 00883484002025); Sure Unscented Antiperspirant Aerosol (6.0 oz) (UPC 00883484002278); Brut Classic Deodorant Aerosol (10 oz) (UPC 00827755070047) (collectively, "Covered Products").

[8] On November 3, 2021, Valisure LLC ("Valisure"), an analytical pharmacy, filed a citizen's petition (the "Valisure Petition or Report") with the United States Food and Drug Administration ("FDA"). The Valisure Petition stated that Valisure had performed tests on batches of body spray products from various manufacturers who marketed and sold the products in the United States, and that a significant number of these products contained detectable levels of benzene. VALISURE CITIZEN PETITION ON BENZENE IN BODY SPRAY PRODUCTS, Nov. 3, 2021, https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-3.pdf.

[9] On November 23, 2021, Plaintiffs Delcid and Roman filed a First Amended Complaint naming Helen of Troy Limited and Tengram Capital Partners, LLC as defendants and removing Unilever United States, Inc. as a party. Dkt. 5.

of New York General Business Law ("GBL") §§ 349 and 350, fraud, and unjust enrichment due to the presence of benzene in Brut antiperspirant aerosol and spray products.  *Id*.

On November 15, 2021, Plaintiff Andrea Fahey ("Fahey") commenced a similar action in the Southern District of Florida alleging similar claims as to Sure products. *Fahey v. Helen of Troy Ltd.*, Case No. 2:21- cv-14441-DMM (S.D. Fla.). On November 19, 2021, Plaintiff Mina Kallamni ("Kallamni"), filed a class action complaint against Tengram Capital Partners, LLC asserting similar claims under New York GBL and for breach of warranties relating to the presence of benzene in Sure and Brut branded antiperspirant spray products. *See Kallamni v. Tengram Capital Partners, LLC*, 1:21-cv- 09616 (S.D.N.Y) ("*Kallamni* Action"). On December 1, 2021, Plaintiffs Mary Molina and Carlo Garcia filed a similar class action in the Eastern District of California. *See Molina v. HRB Brands, LLC, et al.*, No. 2:21-cv-02231-TLN-CKD (E.D. Cal.).

On December 22, 2021, Plaintiffs moved to consolidate the *Delcid* and *Kallamni* Actions and to appoint interim counsel pursuant to Federal Rule of Civil Procedure 23(g). Dkt. 12-13. The Court denied Plaintiffs' motion without prejudice because Defendants had not yet appeared in the case. Dkt. 14. On January 4, 2022, after Defendants filed their notice of appearance, Plaintiffs filed an unopposed motion to consolidate the *Delcid* and *Kallamni* Actions and noted that Plaintiff Fahey intended to dismiss her action and join the *Delcid* Action. Dkt. 16. The Court granted consolidation. Dkt. 17. Accordingly, Plaintiffs filed their Consolidated Class Action Complaint ("CCAC") adding Plaintiffs Mary Molina, Carlo Garcia, and Andrea Fahey and naming TCP Hot Acquisition LLC and Idelle Labs, Ltd. as defendants. Dkt. 21

Plaintiffs alleged that Defendants failed to test and improperly marketed and sold several antiperspirants and deodorants that allegedly contained benzene in violation of state law and sought injunctive relief and compensation for alleged economic losses sustained by U.S. consumer

purchasers of the products. *Id.* The CCAC alleged violations of New York, California, and Florida consumer protection laws and claims for breach of express and implied warranties, fraud, and unjust enrichment resulting from the presence of benzene in the Sure and Brut branded antiperspirant spray products. *Id.*

After the Litigation was filed and after Plaintiffs shared the independent testing results that confirmed the presence of benzene in the Covered Products, Defendants commenced a nationwide recall of the Covered Products. Sultzer Decl. ¶ 14. On February 16, 2022, in an abundance of caution, Defendants initiated a recall of all lots of the Covered Products produced prior to October 2021. This recall was directed at distributors, retailers, and customers. For customers, Defendants offered a full refund, set at the average purchase price of the product, for up to three products without providing a substantiating receipt and an unlimited number of products with proof or substantiation of purchase. The average retail price plus up to 10% sales tax for the Covered Products average $3.91. Angeion Decl. ¶ 21.

Defendants filed a motion to dismiss on March 3, 2022 arguing, *inter alia*, that: (a) Plaintiffs lacked Article III standing; (b) Plaintiffs' claims were preempted; (c) Defendants did not make any express warranties nor did Plaintiffs rely on any warranty; (d) Plaintiffs failed to allege a misstatement; and (e) Plaintiffs failed to allege Defendants had knowledge that the Covered Products contained benzene. Dkt. 29-31. Plaintiffs filed an opposition to the motion to dismiss on March 24, 2022 (Dkt. 40-41) and Defendants filed a reply on April 14, 2022 (Dkt. 43). On May 24, 2022, the Parties informed the Court that they had reached an agreement to resolve the matter. Dkt. 44.

### B.      Settlement Negotiations

The Settlement was reached as a result of extensive arm's-length negotiations between the Parties and counsel, facilitated by a mediation with a respected mediator, the Honorable Judge Steven Gold (Ret.), on May 23, 2022. Before and during these settlement discussions and mediation, the Parties had arm's-length exchange of sufficient information to permit Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions. The Parties did not discuss Attorneys' Fees and Costs or any potential Incentive Award until they first agreed on the substantive terms of this settlement. Sultzer Decl. ¶ 22; § 1.9. Defendants deny all of Plaintiffs' allegations and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it, in the Litigation. § 1.11.

Class Counsel worked together to thoroughly analyze the legal landscape, including conducting research into the various state consumer protection laws and available remedies, and evaluating matters relating to class certification, in order to fully evaluate the risks and benefits to a potential resolution. Sultzer Decl. ¶ 24. Indeed, Class Counsel worked cooperatively to coordinate the Litigation and to save judicial time and resources to consolidate the multiple similar litigations without a protracted battle for lead counsel and to lead the case to mediation and an early resolution. *Id*. ¶ 24.

Based on the Parties' exchange of discovery to date and their respective investigations into the claims and defenses asserted in the actions, the parties agreed to engage in settlement negotiations with a private mediator. *Id.* ¶ 25. In connection with the mediation, Class Counsel requested significant mediation discovery in order to evaluate the claims and position themselves to negotiate a settlement that would be fair and reasonable on behalf of the Settlement Class.

Specifically, Class Counsel requested, and Defendants produced, documents and information regarding the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding contaminants including benzene. Sultzer Decl. ¶ 26.

### C.     Preliminary Approval And The Fairness Process

On October 28, 2022, the Court issued its Order granting preliminary approval of the Settlement Agreement, certifying the Settlement Class and approving the Notice Plan (ECF No. 68).  On December 2, 2022, the Parties executed a Rider to the Settlement Agreement ("Rider") for the sole purpose of adding one product, Brut Classic Deodorant Aerosol (10 oz) (UPC 00827755070047); to the definition of "Covered Products." The Rider also attached amended notices with the sole change being the addition of the one product and to make clear antiperspirant and deodorant products are included in the Covered Products and amending the class definition in the operative complaint to conform to the Settlement Class definition. The Court granted the settlement rider, *see* ECF Doc. 72, and kept all of its findings in its original preliminary approval order in effect.[10]

## III.    ARGUMENT

### A.     Legal Standard

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined

---

[10] In the original preliminary approval order, "[t]he Court conditionally designate[d] Jason P. Sultzer of The Sultzer Law Group, P.C., Charles E. Schaffer of Levin Sedran & Berman LLP, Sarah Westcot of Bursor & Fisher, P.A., and Nick Suciu, III of Milberg Coleman Bryson Phillips Grossman, PLLC as Class Counsel." Dkt. 68 at 3. Moreover, the Court appointed the Angeion Group as the claim administrator (Angeion). Dkt. 68 at 3. Plaintiffs and the Angeion promptly executed the Notice Plan approved by the Court. Sultzer Decl. ¶ 3; *see generally* Angeion Decl.

by the parties, is certifiable under the standards of Rule 23(a) and (b).[11] This Court has considered and granted preliminary approval of class certification. Dkt. 68, 72. For the same reasons described in Plaintiff's memorandum of law in support of the Motion for Preliminary Approval (Dkt. Nos. 64-66), this Court should certify the class for purposes of final approval of the Settlement.  The Court must also determine whether a proposed settlement is fair, reasonable, and adequate under Rule (23)(e).[12]

### B.    Judicial Policy Strongly Favors Settlement

Courts examine both procedural and substantive fairness in light of the strong judicial policy in favor of settlement—especially in class action suits. *Wal-Mart*, 396 F.3d at 116; *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 52 (W.D.N.Y. 2018) ("Settlements are strongly favored as a matter of policy, because, '[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.") (internal quotations omitted); *Springer v. Code Rebel Corp.*, No. 16-cv-3492, 2018 WL 1773137 at *7 (S.D.N.Y. Apr. 10, 2018) (same).

Federal Rule of Civil Procedure 23(e) requires that class action settlements must be "fair, reasonable and adequate." Rule 23(e)(2) deems a settlement "fair, reasonable, and adequate" if:

A.    the class representatives and class counsel have adequately represented the class;

B.    the proposal was negotiated at arm's length;

C.    the relief provided to the class is adequate, taking into account:

---

[11] Unless otherwise noted, internal citations and quotations are omitted.

[12] Prior to the 2018 amendment of Rule 23, to determine procedural fairness, Second Circuit Courts looked to the negotiating process that led to settlement, and to determine substantive fairness, they would review the settlement in light of the factors set forth in *City of Detroit v. Grinnell Corp.* (the "*Grinnell* factors"). *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Since the amendments were instituted, the Second Circuit has examined settlements in light of both the new requirements of Rule 23 and the *Grinnell* factors, many considerations of which overlap. *See, e.g.*, *In re GSE Bonds Antitrust Litigation*, 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020).

(i)      the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to
         the class, including the method for processing class-member
         claims;

(iii)    the terms of any proposed award of attorneys' fees, including
         timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(v)      the proposal treats class members equitably relative to each other.

The first two prongs address the "procedural fairness" of the settlement, while the last two prongs

address the "substantive fairness." Fed. R. Civ. P. 23 Advisory Committee Note (2018).

The Second Circuit has generally considered the nine *Grinnell* factors, to assist in

determining whether the settlement is substantively "fair, reasonable and adequate." *See In re

Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019

WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("There is significant overlap between the Rule

23(e)(2) and the *Grinnell* factors"). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of
> the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the trial,
> (7) the ability of the defendants to withstand a greater judgment, (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery, and (9)
> the range of reasonableness of the settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*See Grinnell*, 495 F.2d at 463.

**C.      The Proposed Settlement is Procedurally Fair**

      i.      <u>Rule 23(e)(2)(A) – Plaintiffs And Class Counsel Have
              Adequately Represented The Class</u>

***First***, the Court determines adequacy by considering whether "the class representatives'

interests are aligned with the interests of the Settlement Class" because they suffered the same

injuries as the other class members. *Melito v. Am. Eagle Outfitters, Inc*., No. 14-CV-2440 (VEC), 2017 WL 3995619, at *8 (S.D.N.Y. Sept. 11, 2017), *aff'd in part, appeal dismissed in part sub nom*., *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85 (2d Cir. 2019). Plaintiffs here have the same interests as Settlement Class Members and vigorously prosecuted the Litigation because they all allegedly were deceived into purchasing the Covered Products that Defendants deceptively failed to disclose were allegedly contaminated with trace amounts of benzene. *In re SunEdison, Inc.*, 329 F.R.D. 124, 142 (S.D.N.Y. 2019) (finding class representative "vigorously pursued claims on behalf of the class, and there is no contention that its interests are antagonistic to other class members"); *see also, e.g.* Dkt. 21 ¶ 34 (describing Plaintiff and the Settlement Class suffering the same injury caused by the same misconduct). Moreover, the Named Plaintiffs have been directly involved in this Litigation, reviewing the pleadings, the proposed Agreement, and communicating extensively with Class Counsel regarding the status of the case and the terms of the proposed Settlement. Through the work of the Named Plaintiffs, Class Counsel were able to fulfill their responsibility of advancing and protecting the interests of the Settlement Class and evaluating the proposed Settlement to determine that it was in the best interests of the Settlement Class. Accordingly, Plaintiffs are adequate representatives as they have exhibited an "interest in vigorously pursuing the claims of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

**Second**, as for the adequacy of Class Counsel, this Court previously appointed attorneys from the firms of Sultzer Law Group, Levin Sedran & Berman, Bursor & Fisher, P.A., and Milberg Coleman Bryson Phillips Grossman, PLLC  as Class Counsel in its Preliminary Approval Order. Dkt. 68 ¶ 5. By appointing the firms, the Court made an initial determination about counsel's adequacy. *Id*. At this later stage, however, the focus shifts to the performance of counsel,

considering the extent of litigation, settlement negotiations, and the results obtained. *See* Fed. R. Civ. P. 23 Advisory Committee Note (2018); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (directing courts to analyze the negotiation process and discovery undertaken). Here, Class Counsel extensively investigated and analyzed, among other things, Defendants' marketing campaign, FDA guidelines regarding the presence of benzene in consumer products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene. Sultzer Decl. ¶ 17. Class Counsel vigorously prosecuted claims on behalf of the Settlement Class, including opposing Defendants' motion to dismiss *Id*. ¶¶ 19. In additional, Class Counsel reviewed the Valisure Report, conducted its own independent testing on the presence of benzene and consulted with experts. *Id.* ¶ 18. Class Counsel bolstered their independent investigation with informal discovery, which included Defendants' production of information regarding the sales data of Covered Products throughout the Class Period as well as Defendants' quality control and testing procedures regarding benzene. *Id*. ¶ 20. Not only have Class Counsel conducted robust legal research and an extensive factual investigation into complex matters, but they also procured key documentation to ensure they were "well-informed of the facts and strength of their claims against" Defendants. *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2015 WL 5918273, at *3 (E.D.N.Y. Oct. 9, 2015).

Class Counsel also zealously negotiated the settlement and terms of the Agreement. Sultzer Decl. ¶ 21. As demonstrated in the firm resumes, Class Counsel possessed the skill and knowledge necessary to evaluate the settlement considering the risks of continued litigation of which Class Counsel were also keenly aware.[13] As set forth below in Section D, the results obtained by Class Counsel through the settlement further demonstrate counsel's adequacy.

---

[13] *See* Class Counsel firm resumes attached to the Sultzer declaration.

ii.     Rule 23(e)(2)(B) – The Settlement Was Negotiated At
        Arm's- Length

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's-length." Where a class settlement is reached through arm's-length negotiations between experienced counsel, the settlement will enjoy a presumption of fairness. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). A mediator's involvement in negotiations can help demonstrate their fairness. *In re Payment Card interchange Fee and Merchant Discount Litigation*, 330 F.R.D. 11, 34-35 (E.D.N.Y. 2019); *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (15th ed. 2018) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion.").

Here, each party, represented by sophisticated and capable counsel, engaged in a bona fide hard-fought negotiation process. Further, the negotiations were overseen by former Magistrate Judge Steven Gold, a highly respected, neutral and seasoned mediator and conducted at arm's-length over a period of several weeks. Sultzer Decl. ¶ 23. As stated by the Honorable Brian M. Cogan in a similar case: "I think that the fact that Judge Gold was involved is, itself, an unusual guarantee of fairness here because he is very adept at these things. He has negotiated  more settlements of these kinds of cases than I ever have or ever will[]. " *See Bangoura v. Beiersdorf, Inc. et al*, 1:22-cv-00291-BMC (E.D.N.Y.) final approval transcript at p. 8-9.

**D.     The Proposed Settlement Is Substantively Fair**

At the final approval stage, courts need not "decide the merits of the case or resolve unsettled legal questions," nor "foresee with absolute certainty the outcome of the case." *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *10 (S.D.N.Y. Mar. 21, 2014). Instead, courts "assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

13

       i.       <u>Rule 23(e)(2)(C)(i) – The Relief Provided To The Class Is</u>
                        <u>Superior To Continued Litigation</u>

The Second Circuit's *Grinnell* factors are effectively codified in Rule 23(e)(2)(C)(i), which guide the analysis of a proposed settlement's substantive fairness.[14]  These factors require balancing "the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014).

       *1.*       *Settlement Avoids Significant Costs and Risks in Establishing*
                        *Liability and Damages, Maintaining the Class Through Trial and*
                        *on Appeal, and the Lengthy Delays of this Process*

These factors require balancing "the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *7 (S.D.N.Y. May 9, 2014).  The relief to the Settlement Class is more than adequate in light of the costs, risks, and time required to litigate this action through trial and appeal.  "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, 2007 WL 927583, at *30 (S.D.N.Y. Mar. 27, 2007). "The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (cleaned up). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010).

---

[14] Seven of the *Grinnell* factors are covered by Rule 23(e)(2)(C)(i): the complexity, expense and likely duration of the litigation (factor 1); the risks of establishing liability (factor 4); establishing damages (factor 5); the likelihood of maintaining a class action through trial (factor 6); the ability of the defendants to withstand a greater judgment (factor 7); the range of reasonableness of the settlement fund in light of the best possible recovery (factor 8); and the amount of the settlement in light of all the attendant risks of litigation (factor 9).

This litigation is no different. Although Plaintiff and Class Counsel are confident that they would ultimately prevail, Defendants have contended all along that they have strong defenses, which could completely defeat, or significantly narrow, the scope of the Litigation, claims, and damages.  Sultzer Decl. ¶ 29.  Defendants have argued Plaintiffs lacked Article III standing; (b) Plaintiffs' claims are preempted; (c) Defendants did not make any express warranties nor did Plaintiffs rely on any warranty; (d) Plaintiffs failed to allege a misstatement; and (e) Plaintiffs failed to allege Defendants had knowledge that the Covered Products contained benzene. Dkt. 29-31.  These risks are underscored by recent matters which were dismissed on the issue of standing. *See e.g., Schloegel v. Edgewell Pers. Care Co.*, 2022 WL 808694, at *2-3 (W.D. Mo. Mar. 16, 2022) (dismissing similar action for failure to establish injury and lack of standing ); *Bowen v. Energizer Holdings, Inc.*, 2023 WL 1786731, at *6-9 (C.D. Cal. Jan. 5, 2023) (dismissing similar action and "determining that an economic harm premised on speculative risks cannot establish Article III standing.").  Indeed, even outside of standing, this Court has dismissed a similar action involved a contaminated product for failure to state a claim.  *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 237 (S.D.N.Y. 2022) (Cote, J.).

Moreover, if the Litigation proceeded to trial, both sides would offer expert testimony on liability and damages. Sultzer Decl. ¶ 30.  Plaintiffs would undoubtedly face a challenge to their class-wide damages expert who would proffer a methodology for calculating aggregate class-wide economic injury. Sultzer Decl. ¶ 31.  Such an expert undertaking is costly, and Plaintiffs expect Defendants would challenge Plaintiffs' ability to calculate a full price premium class-wide. *Id.* Complex litigation, such as this case, often results in a "battle of the experts" on damages, which makes it "difficult to predict with any certainty which testimony would be credited" by the trier of fact.  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998). There

15

is a substantial risk that a jury may accept Defendants' experts' testimony and damages arguments or award far less than the settlement amount or nothing at all.  Sultzer Decl. ¶ 33.  While confident in their claims, Plaintiffs nonetheless face significant risks in establishing liability. Sultzer Decl. ¶ 34. A rigorous battle of the experts would include survey analyses regarding the misrepresentation and omission claims and disputed damages analyses. Sultzer Decl. ¶ 32. Plaintiffs acknowledge the complexity of whether advertising claims deceive reasonable consumers. *Id*.

Finally, even if Plaintiff succeeded at trial, post-trial motions and the potential for appeal could prevent Class Members from obtaining any recovery for several years, if at all. *See*, *e.g.*, *In re Apple Computer Sec. Litig.*, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) (ordering new trial for corporate defendant following $100 million jury verdict for plaintiffs); *see also Malev v. Del Global Techs. Corp.*, 186 F. Supp. 2D 358, 362 (S.D.N.Y. 2002) ("Delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Class Members to wait years for any recovery, further reducing its value."). In balancing "the benefits afforded to the Class, including immediacy and certainty of recovery, against the continuing risks of litigation" (*City of Providence*, 2014 WL 1883494, at *7), the benefit—a certain, immediate recovery of $3.65 million and the testing for benzene—is a favorable result that tilts this factor in favor of approval given the substantial risks of litigation.

2.      *The Recovery Is Reasonable Considering The Best Possible Recovery And Attendant Risks Of Litigation*

Courts often consider the range of reasonableness of the recovery in light of the best possible outcome and the attendant risks of continued litigation. In determining the reasonableness of a settlement, the analysis "does not involve the use of a mathematical equation yielding a particularized sum." *Fleisher v. Phoenix Life Ins. Co*., 2015 WL 10847814, at *10 (S.D.N.Y. Sep. 9, 2015). Indeed, the ratio of the settlement "to the maximum potential recovery need not be the

16

sole, or even the dominant, consideration when assessing the settlement's fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 327 F.R.D. 483, 495 (S.D.N.Y. 2018) (approving settlements where the plaintiffs did not provide total damages estimate). This is because "some risks would be attendant upon continuing to litigate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696. Accordingly, courts analyze "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119; *see also Fleisher*, 2015 WL 10847814, at *8 (the settlement amount should not be judged "in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455.

Here, Plaintiffs' efforts established a $3.65 million common fund, under which each class member will receive, on average, the full purchase price of nearly two Covered Products, with others class members receiving the full purchase price of multiple products. Angeion Decl. ¶¶ 18, 22-23; Sultzer Decl. ¶ 38.  This is a significant, immediate, and certain cash payment that will avoid "the substantial burdens and costs that continued and uncertain litigation would impose on the parties, non-party witnesses, and the courts."  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010); *see also Gay v. Tri-Wire Eng'g Solutions, Inc.*, 2014 WL 28640, at *9 (E.D.N.Y. Jan. 2, 2014) ("When a settlement 'assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor.'").  Accordingly, the Settlement Amount is well within the range of reasonableness. *See Grinnell*, 495 F.2d at 455

& n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 48 (stating that the Second Circuit did not take issue with original settlement recovery of 2.5% of the largest possible class award).[15]

Further, the Settlement Agreement requires Covered Products to be screened for the presence of benzene using commercially reasonable means for at least eighteen months following the entry of the Preliminary Approval Order and to address as test results warrant. § 4.2.  Thus, regardless of whether Class Members submit a Claim, they and the consuming public will avoid millions in economic losses from potentially being deceived into buying Covered Products that allegedly are not worth the purchase price and are not at risk for future exposure to benzene. Sultzer Decl. ¶ 40; *see also Fleisher*, 2015 WL 10847814, at *1 ("The non-monetary benefits also provide very substantial benefits to the Class.").

In short, "[t]he Settlement here offers a 100% recovery of actual damages for recalled and affected products … and injunctive relief, rendering it a rare class action settlement which provides complete relief for all alleged harms. This Settlement provides immediate, real, substantial, and practical benefits to the Class Members.  There is no better settlement."  *See J&J* ECF Doc. 95 at pg 25 (cleaned up).

---

[15] *See also*, *e.g.*, *McLaughlin v. IDT Energy*, No. 14CV4107ENVRML, 2018 WL 3642627, at *13 (E.D.N.Y. July 30, 2018) (finding $1.9 million monetary recovery reasonable despite possible recovery exceeding $900 million); *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) ("The dollar amount of the settlement by itself is not decisive in the fairness determination.  The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.").

        3.      *While Defendants May Be Able To Sustain A Larger Judgment,*
               *That Factor Alone Does Not Undermine Final Approval*

In an action against large corporations, such as Defendants, the defendant "is likely to be able to withstand a more substantial judgment." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 22, 2012). This alone does not undermine the reasonableness of the settlement. *See id.*;

        4.      *The Stage of Litigation And Discovery Completed Favors Approval*

Courts encourage the efficient resolution of class actions where warranted. Early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See Castagna v. Madison Square Garden, L.P.*, 011 WL 2208614, at *6 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees). The central question often considered by courts in examining the stage of litigation is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d. Cir. 2004). Here the Parties acted responsibly in reaching an early settlement of this case. The Settlement was also only reached after extensive investigation, discovery, expert consultations, class member interviews and surveys, as well as the guidance of a Magistrate Judge Steven Gold (Ret.), who served as mediator and is well-versed in issues surrounding consumer class actions. Here, like in *J&J*, "[w]hile negotiations began at an early stage, this action was settled only after JJCI had withdrawn the Aerosol Products from the market and provided relevant discovery which, in turn, permitted Class Counsel to evaluate the probability of success on the merits, the relevant defenses, the possible range of recovery, and the likely expense and duration of the litigation." *J&J* ECF Doc. 95 at 23. Accordingly, Class Counsel had a clear view of the strengths and

weaknesses of this case before agreeing to and recommending that the settlement be approved. As such, the proposed settlement is appropriate, and this factor weighs in favor of approval.

ii.    <u>Rule 23(e)(2)(C)(ii) – The Claims Process Is Fair And Rational</u>

Under this factor, courts examine the proposed "method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Note (2018). "[T]he plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate … An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). The Parties have retained an experienced Claim Administrator, Angeion, who is highly skilled in processing class claims and distributing the proceeds to claimants.  The claim process under the Agreement is a fair, reasonable, and adequate method of equitably distributing the Available Settlement Funds to Settlement Class Members who make valid claims using a simple form. The proposed allocation also represents a reasonable method to ensure that Settlement Class Members "get as much of the available damages remedy . . . as possible and in as simple and expedient a manner as possible." 4 RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 12:15 (5th Ed.) (Westlaw 2018).

Pursuant to the Settlement Agreement, each Settlement Class Member is eligible to receive a refund for the purchase price of the Covered Product(s) with a submitted proof of purchase or, if the class member does not provide proof of purchase, the purchase price of the Covered Product(s) will be determined by the average retail price for up to five (5) Covered Products claimed per household plus a 10% allowance for sales tax. § 3.4 a-b. If a Settlement Class Member submitted

a claim in the Recall, the amount of that Settlement Class Member's payment shall be reduced by the amount each Settlement Class Member has received or shall receive from the Recall (provided that the payment shall not be reduced below $0.00). § 3.4(c). Claimants need only complete a simple Claim Form or online form to provide contact information, purchase information, payment instructions, and an affirmation under penalty of perjury that the information provided is true and correct, the Claimant bought the Covered Product(s) in the United States for purposes other than resale. Ex. A. Claims submitted without proof of purchase are capped at five Covered Products per household, while claims with proof of purchase are unlimited. § 3.4. Settlement Payments in the event of over- or under-subscription will be adjusted *pro rata* downwards or upwards to ensure equal treatment. § 3.5.

An adjustment based on whether the Settlement Class Member received a refund in the voluntary recall ensures fair and equitable treatment of Settlement Class Members.  The cap on claims per household without proof of purchase mitigates the risk of fraudulent claims. Sultzer Decl. ¶ 41. At the same time, claims supported by some reasonably reliable proof of purchase (e.g., receipts or photos of UPCs), which serve as additional evidence of the claim's validity, warrant eligibility for unlimited corroborated claims. *Id*.

The Class Members have responded in an overwhelmingly positive fashion, with 328,438 valid claims and no objections.  Angeion Decl. ¶ 23.  The Available Settlement Funds are approximately $2,105,333.33 after deduction of Claim Administrator Costs ($325,000.00), proposed Attorneys' Fees  and Costs ($1,216,666.67), and, in the event they are granted, incentive awards of $500 each ($3,000 total).  Angeion Decl. ¶ 20; §§ 6.1, 6.2.  As a result of the settlement, $11,344.14 will be distributed to claimants who submitted a Valid Claim with Proof of Purchase. Angeion Decl. ¶ 21. Further, $2,093,989.19 will be distributed to those that submitted a Valid

21

Claim without Proof of Purchase. Angeion Decl. ¶ 21.  The average estimated recovery for those that submitted a Valid Claim, with or without Proof of Purchase, is $6.41.  Angeion Decl. ¶ 21. This is nearly the average purchase price for two Covered Products.

> iii.  Rule 23(2)(C)(iii) – The Proposed Award Of Attorneys' Fees Supports Final Approval

Concurrently with this motion, Class Counsel are applying for attorneys' fees and costs of one-third (1/3) the Settlement Fund, which includes reimbursement of litigation expenses of $20,918.22 and a $500 service awards to the Class Representatives. For purposes of final approval, the requested fee is firmly within the reasonable range of fees granted from comparable class settlements.[16]  Under the Agreement, Class Counsel will receive the applied-for fees and expenses only upon notice and this Court's scrutiny and approval.  Because the attorneys' fees and expenses Plaintiffs seek are in line with awards in this Circuit, this factor weighs in favor of final approval.[17]

> iv.  Rule 23(e)(2)(D) – The Settlement Treats Class Members Equitably Relative To One Another

This factor includes "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed R. Civ. P. 23, 2018 Advisory Committee Note.  As discussed above, Settlement Class Members' individual share of the recovery will be apportioned based upon their purchases and estimated economic losses.  Moreover, the Release is tailored from the factual predicate for the Litigation and treats all

---

[16] *See* concurrently filed Memorandum of Law in Support of Motion for Attorneys' Fees, Litigation Costs, and Service Awards, which discusses in detail the reasonableness of Plaintiffs' application for attorneys' fees and costs as well as why incentive awards are justified.

[17] There are no agreements to be identified pursuant to Rule 23(e)(3).

Settlement Class Members equitably relative to one another. § 8.3.[18]   Further, although Class Members with Proof of Purchase will compensation for more units than those without Proof of Purchase, that does not mean Class Members are treated inequitably.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 7389330, at *3 (S.D.N.Y. Dec. 16, 2020) ("[T]he agreement appears to treat class members roughly equally. The agreement sets forth a formula to determine the value of a class member's claim that depends on 1) the product purchase price in the jurisdiction where the member bought the product, and 2) the quality of proof of purchase presented by the class member.").

## D.   NOTICE ADEQUATELY APPRISED CLASS MEMBERS OF THEIR RIGHTS

Due process requires "the best notice practical under the circumstances." *In re Drexel Burnham Lambert Grp., Inc.*, 995 F.2d 1138, 1144 (2d. Cir. 1993). It does not impose "rigid rules," but instead imposes a "reasonableness" standard that is satisfied when notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. Notice must explain the general terms of the settlement, proposed attorneys' fees, and the date, time and place of the fairness hearing, in a way that would be "understood by the average class member." *Id*.

Angeion caused the email notice of the case to be disseminated to the 9,449 Settlement Class Members. Angeion ¶ 8. Following the settlement rider, Angeion sent notice again on December 21, 2022, causing the second email notice to be disseminated to 9,354 U.S consumer

---

[18] *See also Melito*, 923 F.3d at 95 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."); *Wal-Mart*, 396 F.3d at 109 (approving release of non-parties where the claims released are based on the same underlying factual predicate as the claims asserted against the parties, reasoning that "it is hard to imagine that defendants … would have settled without also releasing [the non-parties] from liability; to do so would have invited relitigation of the same factual allegations")

purchasers. Angeion ¶ 10. "Banner Ads were displayed over a four (4) week period and delivered approximately 3,226,655 impressions." Angeion ¶ 12. "The social media campaign coincided with the programmatic display banner ad campaign and delivered approximately 7,122,631 social media impressions." Angeion ¶ 13.

Angeion also set up a settlement website, in which claims could be filed directly as well as providing pertinent information regarding the settlement. Angeion ¶ 16. "[T]he Settlement Website has received 625,260 website visits by 588,044 unique users totaling 917,879 pageviews." Angeion ¶ 16. In addition, Angeion set up a toll-free hotline regarding the settlement. Angeion ¶ 17.

The Notice Plan was the most cost-effective means because Plaintiffs and Defendants had limited information on the identity of customers who bought the Covered Products other than those who had submitted for a refund in the voluntary recall. Courts have recently acknowledged that, under similar circumstances, a notice plan such as that here satisfied due process.[19]  The notice was also highly effective. For example, while "[t]he media portions of the Notice Plan were designed to deliver an approximate 75.12% reach with an average frequency of 3.19 times[,] [t]he Notice Plan exceeded expectations by delivering an approximate 77.13% reach with an average frequency of 3.65 times each." Angeion ¶ 15. [20]

---

[19] *See Schneider v. Chipotle Mexican Grill, Inc.*, 2020 WL 511953, at *11 (N.D. Cal. Jan. 31, 2020) ("Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign."). Courts in this Circuit hold that individual notice is not required. *See Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) (publication "adequately served to notify class members that a potential compromise had been reached"); *Katz v. ABP Corp.*, 2014 WL 4966052, at *4 (E.D.N.Y. Oct. 3, 2014) (approving notice via national and regional publication).

[20] *See also Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23."). FED. JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 1 (2010), accessible at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf  (endorsing a 70-95% reach as consistent with due process).

E.     THE REACTION OF THE SETTLEMENT CLASS FAVORS
       APPROVAL[21]

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the Settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6875472, at *16; *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The Settlement Class's reaction to the settlement is overwhelmingly favorable. *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").  To date, no objectors have come forward or filed an objection. Angeion Decl. ¶ 23; Sultzer Decl. ¶ 4. Furthermore, only 10 exclusion requests have been received. Angeion Decl. ¶ 22. By contrast, claims activity has been robust indicating that the class is satisfied with the remedy, with over 328,000 valid Claim Forms received.  The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Accordingly, given the lack of objections and limited number of exclusions, this factor weighs in favor of approval of the Settlement.

---

[21] Class reaction is *Grinnell* factor 2.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Final Approval of Class Action Settlement

should be GRANTED.

Dated: March 8, 2023                    Respectfully submitted,

**THE SULTZER LAW GROUP, P.C.**

By:  */s/ Jason P. Sultzer*
Jason P. Sultzer, Esq.
Philip J. Furia, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Phone: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

**BURSOR & FISHER, P.A.**
Max S. Roberts, Esq.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, Esq.*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.*
David C. Magagna Jr., Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: dmagagna@lfsblaw.com
            cschaffer@lfsblaw.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu, III, Esq.**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Jennifer Czeisler, Esq.**
Virginia Ann Whitener, Esq.**
Russell Busch, Esq.**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
        gwhitener@milberg.com
        rbusch@milberg.com

**Admitted *Pro Hac Vice*
***Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the
Settlement Class*

27