## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OTTO DELCID, LUZ ROMAN, MINA KALLAMNI, MARY MOLINA, CARLO GARCIA, and ANDREA FAHEY on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>   v.<br><br>TCP HOT ACQUISITION LLC and IDELLE LABS, LTD,<br><br>                    Defendants. | Case No. 1:21-cv-09569-DLC<br><br>Hon. Denise L. Cote |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

Dated: March 8, 2023

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Philip Furia, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
E-Mail: sultzerj@thesultzerlawgroup.com
       furiap@thesultzerlawgroup.com
       dolgoffm@thesultzerlawgroup.com

**BURSOR & FISHER, P.A.**
Max S. Roberts, Esq.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, Esq.*
701 Brickell Avenue, Suite 1420
Miami, FL 33131

Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.*
David C. Magagna Jr., Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: cschaffer@lfsblaw.com
           dmagagna@lfsblaw.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
Nick Suciu, III, Esq.*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
Virginia Ann Whitener, Esq.**
Russell Busch, Esq.**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
E-Mail: gwhitener@milberg.com
           rbusch@milberg.com

*Admitted *Pro Hac Vice*
**Pro Hac Vice* Application Forthcoming

*Attorneys for Plaintiffs and the
Settlement Class*

## TABLE OF CONTENTS

Table of Contents……………………………………………………………………..i-ii

Table of Authorities………………………………………………………………..iii-vii

PRELIMINARY STATEMENT…………………………………………………………1

ARGUMENT………………………………………………………………………...5

   I.      LEGAL STANDARD………………………………………………………5

     A.  Federal Rule of Civil Procedures 23(h) and the *Goldberger* Factors………………...5

     B.  The Percentage-of-the-Fund Method is the Typical Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit………………………5

   II.     CLASS COUNSELS' FEE REQUEST IS FAIR AND REASONABLE UNDER *GOLDBERGER* AND REPRESENTS A FAIR AND REASONABLE PERCENTAGE-OF-THE-FUND………………………………………………8

     A.  The Fee Request is Reasonable Under the *Goldberger* Factors…………………..9

        1.   Class Counsel Invested Substantial Time and Resources Over the Course of This Litigation……………………………………………………...9

        2.   This Class Action Included Complex Legal Issues………………………..12

        3.   The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation……………………………………………………………..13

        4.   Class Counsel Provided (and Continue to Provide) High-Quality Representation……………………………………………………………16

        5.   The Fee Request is Reasonable in Relationship to the Settlement…………..18

        6.   Public Policy Supports Approval of the Fee…………………………………18

     B.  The Requested Fee Represents a Reasonable Percentage-of-the-Fund…………19

     C.  A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of Class Counsel's Requested Fee……………………………………………21

     D.  The Reaction of Class Members Supports Class Counsel's Fee Request………22

III.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION
        COSTS IS REASONABLE……………………………………………………….23

IV.    PLAINTIFFS' REQUEST FOR MODEST SERVICE AWARDS IS
        REASONABLE……………………………………………………………………..24

CONCLUSION…………………………………………………………………………………..25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics,*
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...................................................................................14

*Asare v. Change Grp. of N.Y., Inc.,*
2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ......................................................................22

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,*
Case No. 1:22-cv-00291-BMC (S.D.N.Y.) .................................................................... passim

*Beckman v. KeyBank, N.A.,*
293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................... passim

*Bowen v. Energizer Holdings, Inc.,*
2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) ........................................................................14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,*
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................................7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) ...................................................................................................6

*Chatelain v. Prudential-Bache Sec.,*
805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................................16

*In re Citigroup Inc. Bond Litig.,*
988 F. Supp. 2d 371 (S.D.N.Y. 2013) ..................................................................................12

*City of Providence v. Aéropostale, Inc.,*
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................................22

*Clark v. Ecolab, Inc.,*
2010 WL 1948198 (S.D.N.Y. May 11, 2010) ..................................................................9, 20

*In re Colgate-Palmolive Co. ERISA Litig.,*
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ....................................................................................21

*In re Credit Default Swaps Antitrust Litig.,*
No. 13MD2476 (DLC),
2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) .............................................................6, 21, 24

*DeLeon v. Wells Fargo Bank, N.A.*,
  2015 WL 2255394 (S.D.N.Y. May 11, 2015) ........................................................24

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................24

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  2001 WL 709262 (S.D.N.Y. June 22, 2001) ........................................................14

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...................................................................6

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................16, 18

*Gevaerts v. TD Bank*,
  2015 WL 6751061 (S.D. Fla., Nov. 5, 2015)........................................................14

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................13

*Goldberger v. Integrated Res. Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................ passim

*Harris v. Pfizer Inc.*,
  586 F. Supp. 3d 231 (S.D.N.Y. 2022) (Cote, J.)....................................................15

*Hernandez v. Uzzal Pizzeria, Inc.*,
  2022 WL 1032522 (S.D.N.Y. Apr. 6, 2022)......................................................8, 20

*Hesse v. Godiva Chocolatier, Inc.*,
  2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022).......................................22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ......................................................22

*Hicks v. Morgan Stanley & Co.*,
  2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) .......................................22

*In re Holocaust Victim Assets Litig.*,
  2007 WL 805768 (E.D.N.Y. Mar. 15, 2007) .......................................................13

*Jermyn v. Best Buy Stores, L.P.*,
  2012 WL 2505644 (S.D.N.Y. June 27, 2012) ......................................................16

*In Re: Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and
   Products Liability Litigation*,
  Case 0:21-md-03015-AHS (S.D. Fla.)........................................................... passim

iv

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
    2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ......................................12

*Khait v. Whirlpool Corp.*,
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................................................9, 20

*In re Lloyd's American Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..........................................................................6

*Luib v. Henkel Consumer Goods, Inc.*,
    2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) ..........................................................20

*Luib v. Henkel Consumer Goods Inc.*,
    Case No. 1:17-cv-03021-BMC (E.D.N.Y.) ..............................................................................17

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................18, 22

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................................7

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) ................................................................................................3, 6

*Mayhew v. KAS Direct, LLC*,
    7:16-cv-06981-VB (S.D.N.Y.), ECF No. 149 ............................................................................9

*McDaniel v. Cty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010) ....................................................................................................5

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................................................................24

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................................16

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ..............................................................................................................23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................13, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ..............................................................................16, 17

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..............................................................................................................18

*In re Polaroid ERISA Litig.*,
   2007 WL 2116398 (S.D.N.Y. July 19, 2007) ........................................................6

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
   912 F. Supp. 97 (S.D.N.Y. 1996) ..........................................................................12

*Puglisi v. TD Bank, N.A.*,
   2015 U.S. Dist. LEXIS 100668 (E.D.N.Y. July 30, 2015) ................................9, 20

*Raniere v. Citigroup Inc.*,
   310 F.R.D. 211 (S.D.N.Y. 2015) ........................................................................9, 20

*Rapoport-Hecht v. Seventh Generation, Inc.*,
   2017 U.S. Dist. LEXIS 219060 (S.D.N.Y. Apr. 28, 2017)................................9, 20

*Reyes v. Altamarea Grp.*,
   2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................................8, 20

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2006)....................................................................................5

*In re RJR Nabisco, Inc. Sec. Litig.*,
   1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .........................................................22

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999).....................................................................................7

*Schloegel v. Edgewell Pers. Care Co.*,
   2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ........................................................14

*Sewell v. Bovis Lend Lease, Inc.*,
   2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ..........................................................6

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999).........................................................................7

*Taft v. Ackermans*,
   No. 02-cv-7951,
   2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ..........................................................16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................................................14

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................13

*Torres v. Gristedes Operating Corp.*,
   519 F. App'x 1 (2d Cir. 2013) ................................................................................19

*Trinidad v. Pret a Manger (UDS) Ltd.*,
   2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ..................................................8, 20

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..................................................................24

*In re Vitamin C Antitrust Litig.*,
   No. 06-MD-1738 (BMC) (JO),
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................23

*Wal-Mart Stores Inc. v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005) .............................................................................6, 7

*In re Warner Comm'ns. Secs. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................17

*Warren v. Xerox Corp.*,
   2008 WL 4371367 (E.D.N.Y. Sept. 19, 2008) .....................................................8, 20

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .......................................................9, 20

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................7, 17, 19

**Statutes**

Federal Food, Drug and Cosmetic Act ..................................................................13, 15

Federal Rule of Civil Procedure 23(f) ...................................................................16

Federal Rule of Civil Procedure 23(h) .................................................................5, 23

Plaintiffs Otto Delcid, Luz Roman, Mina Kallamni, Mary Molina, Carlo Garcia, and Andrea Fahey, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of Plaintiffs' Motion For Attorneys' Fees, Litigation Costs, and Incentive Awards.

## PRELIMINARY STATEMENT

In this matter, Class Counsel's efforts have resulted in a settlement[1] for Class Members which both generates a $3.65 million Settlement Fund while simultaneously providing valuable injunctive relief, in addition to Defendants' voluntary recall of the Covered Products which was initiated after the filing of this action and resulted in additional compensation to Class Members. By any measure, Class Counsel's efforts have been an unqualified success, and the Class Members have responded in kind, with over 328,000 Valid Claims submitted with zero objections and only ten requests for exclusion.  Class Counsel now asks this Court to award reasonable attorney's fees, litigation costs and incentive awards.

This settlement materialized as a result of Class Counsel's effort in conducting independent testing, which confirmed the presence of benzene in the Covered Products. Through the settlement, Class Members are expected to receive on average nearly the full purchase price of two Covered Product, with others class members receiving the full purchase price of multiple products. Angeion Decl. ¶¶ 18, 22-23; Declaration of Jason P. Sultzer in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Litigation Costs, and Service Awards ("Sultzer Decl.") ¶¶ 6.  The notice program designed and implemented by Class

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning as they do in the Settlement Agreement. References to "§" are to sections of the Settlement Agreement, ECF No. 66-1, and all Settlement Agreement exhibits are referred to as "Ex #."

Counsel and Angeion Group ("Angeion") was a resounding success, reaching 77.13% of the class.[2] A recovery of this magnitude is extremely rare in consumer class actions and likely represents a more favorable result than could have been obtained if the case was successfully tried before a jury.

Above and beyond this Settlement, the Class Members have obtained substantial benefits from the nationwide recall initiated by Defendants.  Overall, the recall provided a total of $134,998.96 to 9,512 consumers.  Sultzer Decl. ¶ 17.  This recall compensation, which occurred after the filing of this action and after Class Counsel conveyed to Defendants the results of their independent testing, adds additional monetary value on top of that already obtained by the settlement.  Further, the outcome of the recall highlights the success of the settlement given the enormous increase in claims from Settlement Class Members, thus drastically increasing the scope of recovery.  And, besides the significant monetary recovery obtained by Class Counsel through the settlement and nationwide recall, Plaintiffs also obtained significant injunctive relief requiring the Covered Products to be screened for benzene. The injunctive relief adds substantial value to the Settlement by minimizing the risk of future benzene exposure to the Settlement Class and the general public.

In view of the degree to which Class Counsel succeeded in obtaining an exemplary result for the Class Members, Class Counsel is entitled to recover reasonable attorney's fees and litigation costs.  To that end, Class Counsel respectfully request that the Court award attorneys' fees and costs in the amount of $1,216,666 as compensation for their efforts and excellent results

---

[2] The Notice Plan exceeded expectations and is above the generally accepted standard in these types of cases.  *See* Declaration of Steven Weisbrot of Angeion Group LLC ("Angeion Decl.") at ¶ 15; FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) (explaining a proposed notice plan should "reach between 70-95%" of class members).

they obtained on behalf of the class.  Class Counsel contends that the requested amount is reasonable in accordance with the factors set forth in the Second Circuit's *Goldberger* decision. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000).  Moreover, the requested fee comports with the Second Circuit's preference to award fees based on a 'portion of the fund' approach in cases where a common fund has been created. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").  The requested award here represents one-third of the Settlement Fund, which, as explained below, is well within the amounts of fees awarded in the Second Circuit.  The reasonableness of this award is supported and confirmed by the fact that a lodestar "cross-check" is only a multiplier of 1.02, which is well within the range approved by courts in the Second Circuit and throughout the country.  In addition, the request includes reimbursement for reasonable and necessary litigation expenses, which were advanced by Class Counsel without any guarantee that they would be reimbursed, as well as a modest incentive award of $500 to each of the Named Plaintiffs in recognition of their efforts in leading this Litigation.

Two recently approved benzene contamination settlements, including one by the Hon. Brian M. Cogan in the Eastern District of New York, serve as strong precedent for this Court to consider when evaluating Class Counsel's instant application. In *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y.), Plaintiff filed nearly identical claims alleging that certain spray sunscreen products were contaminated with benzene and reached a similar settlement.  Judge Cogan approved the settlement and awarded class counsel their requested fees and costs which amounted to one-third of the settlement fund. *Bangoura*, No. 1:22-

cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39). Judge Cogan commended Class Counsel for their efforts in resolving the case efficiently. *Id.*, Final Approval Hearing Tr. at 9 ("I think there is definitely a premium to be taken for the fact that the case was settled at an early stage … [it is] a testament to the efficiency of plaintiffs' counsel's efforts."). The settlement in this action provides even more value than that in *Bangoura*, as, in that matter, class members recovered approximately 50% of the average retail price of one product (ECF No. 37-2, ¶ 36) and Class Members here are on average recovering a much greater percentage of their purchase price.

In Re: Johnson & Johnson Aerosol Sunscreen Marketing, Sales Practices and Products Liability Litigation (hereinafter "*J&J*"), Case 0:21-md-03015-AHS (S.D. Fla.), is yet another benzene settlement that was finally approved with the court awarding class counsel fees amounting to one-third of the settlement and 1.3 lodestar multiplier.  In finally approving the settlement, the Court noted the significant value of the injunctive relief and the fact that it was the best settlement available.  *J&J*, ECF Doc 95 at 25, 29.  This settlement is also stronger than the one in *J&J* as Plaintiffs do not attempt to place a value on the significant injunctive relief obtained nor are they relying on Defendants' own recall to create the cash value of their settlement. *See J&J* at ECF Doc. 82-1, ¶¶45-49.  Rather, this settlement independently brings significant cash benefits to Settlement Class Members above and beyond the benefits paid out in the recall which was instituted after the initiation of this litigation.[3]  And unlike in *J&J*, no objections were lodged in

---

[3] In *J&J*, the cash provided to consumers was from the Defendant's recall itself. In addition, the attorneys in the case placed significant value on the injunctive relief. *See* J&J at ECF Doc. 82-1, ¶¶ 45-49. Here, Plaintiffs have not placed a value on the injunctive relief component of their settlement and they have significantly enhanced Defendants' recall. As noted above 9,512 consumers submitted claims in Defendants' own recall while 328,438 claims have been submitted for benefits in this settlement. So, while *J&J* relies on the recall for cash, Plaintiffs here have significantly expanded the scope of those receiving benefits.

the instant matter.  The absence of any objections in the instant matter is a significant factor the Court should consider in evaluating the request for fees and expenses.

Against this backdrop, and as explained more fully below, Class Counsel respectfully request that this Court grant the instant motion in its entirety.

## ARGUMENT[4]

## I.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedures 23(h) and the *Goldberger* Factors

Federal Rule of Civil Procedure 23(h) provides that courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h).  In the Second Circuit, the reasonableness of requested attorneys' fees is analyzed according to the factors detailed in the seminal decision *Goldberger v. Integrated Res. Inc*., 209 F.3d 43, 48-49 (2d Cir. 2000).  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation … ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Goldberger*, 209 F.3d at 50. The *Goldberger* factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 301 (3d Cir. 2006).

### B.  The Percentage-of-the-Fund Method is the Typical Method For Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

There are two methods for determining the appropriate award of attorneys' fees from a common fund, the "percentage of the fund" method and the "lodestar" method.  *McDaniel v. Cty.*

---

[4] Plaintiffs incorporate the factual background in their memorandum in support of final approval contemporaneously filed herewith.

*of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (citations omitted).   Under the percentage method, the court calculates the fee award as some percentage of the settlement fund.   *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007).   Under the lodestar method, the court assesses the number of hours reasonably billed and then multiplies them by an appropriate hourly rate.   *See Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 309 (E.D.N.Y. 2015) (citations omitted).

In cases such as this, where a settlement fund has been created, courts in the Second Circuit favor the use of a 'percentage of the fund' approach in awarding attorney's fees. *See Wal-Mart Stores Inc. v. Visa U.S.A.,* 396 F.3d 96, 122 (2d Cir. 2005) (noting the trend in the Second Circuit toward the percent of fund method of assessing attorneys' fees and the use of lodestar as a "cross-check" to a percentage award); *In re Lloyd's American Trust Fund Litig.,* 2002 WL 31663577, *24 (S.D.N.Y. Nov. 26, 2002) (finding the percentage of the fund approach to be the most appropriate in a case where a common benefit is provided to a class) (collecting cases); *see also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012); *In re Polaroid ERISA Litig*., 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007). *See In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *16 (S.D.N.Y. Apr. 26, 2016) ("*CDS*") ("Attorneys whose work created a common fund for the benefit of a group of plaintiffs 'may receive reasonable attorneys' fees from the fund."). In such cases, under binding Second Circuit precedent, the fees awarded are based on "the total funds made available, whether claimed or not."  *Masters*, 473 F.3d at 437.

Courts in this Circuit have found numerous advantages to using the percentage method of awarding fees in common fund cases. *First*, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve a case efficiently

and to create the largest total value for the class. *Wal-Mart Stores, Inc.*, 396 F.3d at 122.  *Second*, this method is aligned with market practices, as it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (noting the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients").  *Third*, the percentage method promotes efficiency and early resolution, as it eliminates any incentive plaintiffs' lawyers may have to run up billable hours—one of the most significant downsides to using the lodestar approach. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method"). *Fourth*, the percentage method provides "appropriate financial incentives" necessary "to attract well-qualified plaintiffs' counsel who are able to take a case to trial," while also "directly align[ing] interests of the class and its counsel" by providing "a powerful incentive for the efficient prosecution and early resolution of litigation." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355, 359 (S.D.N.Y. 2005). "Although district courts may use both methods when approving an award of attorneys' fees, the Second Circuit encourages using the lodestar method only as a cross-check for the percentage method." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *14 (S.D.N.Y. Dec. 23, 2009) (citing *Goldberger*, 209 F.3d at 50).  Finally, the percentage method preserves judicial resources because it relieves the "cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchants Bank*, 166 F.3d at 461 n.4, *quoting Third Circuit Task Force*, 108 F.R.D. 237, 258.

As set forth below, Plaintiff's counsel's request for fees using a percentage-of-the-fund approach is reasonable under *Goldberger* and within the range typically awarded by courts in this Circuit.

## II.   CLASS COUNSELS' FEE REQUEST IS FAIR AND REASONABLE UNDER *GOLDBERGER* AND REPRESENTS A FAIR AND REASONABLE PERCENTAGE-OF-THE-FUND.

In the Settlement Agreement, the Parties agreed that Class Counsel may seek attorneys' fees. (ECF No. 66-1 at § 6.1.)  Accordingly, Class Counsel request a fee and costs award of $1,216,666. to be paid from the common fund. Applying the *Goldberger* factors, Class Counsel submits that its request for one-third of the fund is reasonable. The fees requested by counsel here are well within the range typically awarded by courts in this Circuit and have been awarded in similar benzene and consumer fraud class action cases. *See*, *e.g.*, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a similar benzene contamination case); *J&J* (ECF No. 95) (awarding one third of settlement fund and 1.3 multiplier to class counsel in similar benzene contamination action); *Trinidad v. Pret a Manger (UDS) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) ("[A]warding fees of 33% is common in this district."); *Hernandez v. Uzzal Pizzeria, Inc.*, 2022 WL 1032522, at *1 (S.D.N.Y. Apr. 6, 2022) (same); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Warren v. Xerox Corp.*, 2008 WL 4371367, at *22 (E.D.N.Y. Sept. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33% of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (noting fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private

retainer agreements.").[5]  The fee request compensates Class Counsel for their investment of time, expertise, and capital, which produced a successful outcome for the Settlement Class in a case that was both complex and high risk.

### A.    The Fee Request is Reasonable Under the *Goldberger* Factors

Class Counsel respectfully submit that an analysis of the *Goldberger* factors demonstrate that the fee and expense request is reasonable and appropriate and warrants approval by the Court.

####         1.    Class Counsel Invested Substantial Time and Resources Over the Course of This Litigation

As detailed in the concurrently filed Memorandum in Support of Plaintiffs' Motion for Final Approval, Class Counsel have dedicated their time, effort, and expense to this litigation, and they have done so entirely on a contingent basis with no guarantee of compensation or even reimbursement of expenses.[6]  Since both before and after the inception of this case in 2021, Class Counsel have dedicated 1465.5 hours of attorney and other legal professional time through March 7, 2023. Class Counsel have also incurred reasonable and necessary litigation expenses in prosecuting this Litigation. Class Counsel has been working on this case since at least September 2021, when they began their detailed pre-suit investigations into the presence of benzene in Defendants' products. Sultzer Decl. ¶ 9. Class Counsel interviewed potential class representatives

---

[5] *See also*, *e.g.*, *Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 U.S. Dist. LEXIS 219060, at *8-9 (S.D.N.Y. Apr. 28, 2017) (awarding 33.3% of $4.5 million settlement fund); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220-22 (S.D.N.Y. 2015) (approving one-third of $4,650,000 settlement as fees); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund)*Mayhew v. KAS Direct, LLC*, 7:16-cv-06981-VB (S.D.N.Y.), ECF No. 149 (33.3% of $2,215,000 settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund); *Puglisi v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 100668, at *3-4 (E.D.N.Y. July 30, 2015) (awarding 33.3% of $9.9 million settlement fund).

[6] The extensive factual and legal investigation and prosecution of the Litigation is detailed in the Plaintiffs' Motion for Final Approval of Class Action Settlement concurrently filed herewith.

and reviewed publicly available information regarding benzene and the hazards of same as part of their investigation. *Id*. ¶ 10.  Class Counsel also spent significant time and resources drafting pleadings, including the complaints and amended complaints. *Id*. ¶ 11.  Class Counsel also worked with various experts regarding damage theories and testing of the Defendants' products.  *Id*. ¶ 12

Between November 15, 2021 and December 1, 2021, four separate actions were filed in three courts asserting similar claims resulting from the alleged presence of benzene in the Covered Products. *Id.*. ¶ 13. Class Counsel took it upon themselves to self-organize and consolidate the actions into the instant action, avoiding a potentially lengthy leadership fight and saving the parties from additional costs and preserving judicial resources.  *Id*. ¶ 14.

Further, Class Counsel opposed Defendants' motion to dismiss and filed a motion to appoint lead counsel.  *Id*.  Class Counsel also conducted independent testing for benzene content and worked with its experts to help formulate the strategy to prosecute the case. *Id.* ¶12. Class Counsel also conducted significant legal research and an investigation into industry reports, scientific and epidemiological studies/literature regarding the dangers of benzene, and the Covered Products' market segment as follows:

- Class Counsel thoroughly analyzed the legal landscape and evaluated the risks and benefits of prosecuting the Litigation and an early resolution, including research into the various state consumer protection laws and available remedies, and evaluation of certification.

- Class Counsel extensively analyzed, in detail, the claims alleged in the complaint, Defendants' advertising campaigns, the relevant FDA guidelines concerning labeling and advertising disclosure requirements for antiperspirant and deodorant, FDA guidelines regarding the presence of benzene in consumer products, the scientific research concerning the dangers of benzene, and research regarding how Defendants should have known the Products contained benzene.

- Class Counsel analyzed the report issued by Valisure, an analytical pharmacy, patient advocacy, and consumer protection organization, and conducted their own independent testing for the presence of benzene.

- Class Counsel investigated and consulted with industry experts regarding *inter alia* the

10

presence of benzene in aerosol antiperspirant and deodorant products, regulations governing benzene in aerosol antiperspirant and deodorant products, potential sources and elimination of that source of benzene in aerosol antiperspirant and deodorant products and testing and screening for benzene in aerosol antiperspirant and deodorant products

- Class Counsel analyzed the chain of distribution of the Covered Products and pricing per unit to help support and determine Plaintiffs' damages model.

- Class counsel investigated and consulted with experts regarding damages model for consumers purchasing an adulterated and or misbranded aerosol antiperspirant and deodorant product contaminated with benzene.

- In addition, Class Counsel conducted research into the market segment related to the Covered Products to understand the potential scope of this matter, economic losses to Class Members, and marketing and sales trends, practices, and patterns.

Sultzer Decl. ¶ 28.

While the Defendants' motion to dismiss was pending, the Parties engaged in settlement discussions. *Id*. ¶ 29. Class Counsel engaged in several months of arms'-length negotiations. *Id*. ¶¶ 23. After preliminary discussions and exchange of information, the parties agreed to jointly retain the Honorable Judge Steven Gold (Ret.), a former magistrate/judge for the United States District Court for the Eastern District of New York. *Id*. As part of the settlement negotiations, a full-day mediation session took place with Judge Gold (Ret.). *Id*. At the mediation, the Parties reached an agreement in principle. *Id*. ¶ 24. The parties agreed to continue negotiations after the mediation to finalize the specific settlement terms, details of the notice plan and claims administration process, and, for several weeks thereafter class Counsel and Defendants' counsel did so with the assistance from Judge Gold.  *Id*.  Class Counsel drafted the Settlement Agreement in accordance with the term sheet. In addition, Class Counsel sought bids from notice providers and ultimately engaged the services of Angeion. Class Counsel worked to develop a Notice Plan and the notice documents that would be submitted to the Court with Plaintiffs' Motion For Preliminary Approval. Preliminary approval of the Settlement was granted on October 28, 2022.

That Class Counsel reached an excellent and expeditious settlement should not impede their ability to recover for their efforts. As this Court ruled in *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 2004 U.S. Dist. LEXIS 21429, at *35-37 (S.D.N.Y. Oct. 26, 2004) (Cote, J.) ("Any award of attorneys' fees therefore should recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so.").  In fact, in a settlement hearing for the *Bangoura* benzene action then the instant matter, Judge Cogan in the Eastern District of New York commented:

> With regard to the attorneys' fees, I agree with everything counsel has said. ***I think there is definitely a premium to be taken for the fact that the case was settled at an early stage.*** It is very often the case in these kinds of consumer fraud cases, whether it's marketing or potential personal injury or lack of value, that the case can drag on, you know, despite my best efforts I've had them drag on for four or five years. ***And the fact that I'm looking at 2022 index number on this case is, in itself, a testament to the efficiency of plaintiffs' counsel's efforts.***

Tr. of Final Approval Hearing, at 9:11-20, *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 5, 2023).  Thus, this factor weighs heavily in favor of this fee application, especially given the complexity of the case and the magnitude of both monetary and non-monetary recovery.

### 2.     This Class Action Included Complex Legal Issues

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Beckman,* 293 F.R.D. at 481-83 (citing *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996) ("[C]lass actions 'have a well-deserved reputation as being most complex.'"). In cases that require more expertise, a larger percentage of the fund should be awarded to the lawyers who can competently prosecute the case. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award.").

This Litigation is no exception. This class action, had it been litigated, would have involved complex damages methodologies and a scientific battle of the experts as to the fairness or falsity of the labeling and to the content of benzene for the Covered Products. These factors make actions such as this inherently complex and high risk. Relative to other lawsuits, there are additional burdens in the instant Litigation that Plaintiffs faced including the possibility that their claims could be preempted by the FDCA, other issues concerning the merits of the claims, class certification, standing, and establishing and calculating damages. As the *J&J* court noted:

> if litigation had continued there would have been a 'battle of experts' with an uncertain outcome. Damages could have also been highly contested based on the Parties' laboratory results. In sum, continuing this action without a settlement would have involved several major litigation risks and delays, including, but not limited to, class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review.

*J&J* (ECF No. 95 at 22).

Thus, a fee award that accounts for the prosecution of litigation that was "extraordinary in both complexity and scope" is appropriate. *In re Holocaust Victim Assets Litig.*, 2007 WL 805768, at \*46 (E.D.N.Y. Mar. 15, 2007); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("There can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result."). The magnitude and complexity of legal issues involved in this case further reinforces the reasonableness of Class Counsel's requested fee percentage.

### 3. The Requested Fee is Warranted Based on the High-Risk Nature of the Litigation

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("Courts have repeatedly recognized 'that the risk of the litigation' is a

pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions."). Courts in this Circuit have long recognized that the risk associated with a case bears heavily upon the determination of an appropriate fee award. *See In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) ("[It is] appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award."). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."). "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *Beckman*, 293 F.R.D. at 481-83 (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001)); *see also Gevaerts v. TD Bank*, 2015 WL 6751061, at *13 (S.D. Fla., Nov. 5, 2015) (class counsel "assumed a significant risk of non-payment or underpayment. Numerous cases recognize such a risk as an important factor in determining a fee award.")

"It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. At the time of filing of this Litigation, there were complex issues of fact and law, which presented significant risks that continue through today. In particular, the claims asserted herein have been met with strong opposition in other courts nationwide. Further, there have been varying results in actions involving similar benzene contamination claims in federal courts in different districts. *See e.g., Schloegel v. Edgewell Pers. Care Co.*, 2022 WL 808694, at *2-3 (W.D. Mo. Mar. 16, 2022) (dismissing similar action for failure to establish injury and lack of standing ); *Bowen v. Energizer Holdings, Inc.*, 2023 WL 1786731, at *6-9 (C.D. Cal. Jan. 5, 2023) (dismissing similar action and "determining that an economic harm premised on speculative

14

risks cannot establish Article III standing.").  Indeed, even outside of standing, this Court has dismissed a similar action involved a contaminated product for failure to state a claim.  *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 237 (S.D.N.Y. 2022) (Cote, J.).

Here, Class Counsel have prosecuted this action diligently from the outset despite the considerable risks. Plaintiffs took it upon themselves to self-organize and consolidate the multiple actions that were filed and then coordinate to draft and file a consolidated amended complaint. Sultzer Decl. ¶ 14; ECF No. 21. On March 3, 2022, Defendants filed a motion to dismiss the consolidated complaint. ECF No. 29-31. Defendants' motion to dismiss involved complex issues of standing, preemption and consumer protection law that required significant research and briefing. Plaintiffs' filed their opposition to the motion to dismiss on March 24, 2022. ECF No. 40.

While Class Counsel believe that the Plaintiffs' claims are meritorious, there were substantial risks through continued litigation. As discussed in Plaintiffs' Memorandum in Support of their Motion for Final Approval, the Defendants have consistently argued that Plaintiffs lack Article III standing because they have not alleged that they suffered an adverse health effect, have failed to allege that they purchased a product that contained benzene and have not properly alleged they suffered an economic injury by way of paying a price premium. Moreover, Defendants vigorously argue that all of Plaintiffs' claims are preempted by the Federal Food, Drug and Cosmetic Act ("FDCA") by imposing state law labeling requirements that are not required by the FDCA. Further, Defendants argue that Plaintiffs' state law claims fail because they do not adequately plead a misrepresentation or omission and cannot show that Defendants had knowledge of the presence of benzene in the Covered Products. Even if Plaintiffs were able to successfully

defeat those arguments, there is risk that a jury could find that a reasonable consumer would not have been mislead by the Covered Products' labels.

Moreover, although Class Counsel believe that a class would be certified even over Defendants' objections, there was always a risk that Defendants would successfully oppose class certification. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("While plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Even if the Class was certified by the Court, Defendants could have then attempted to appeal the certification decision under Federal Rule of Civil Procedure 23(f) or argued for decertification as the litigation progressed. *See Chatelain v. Prudential-Bache Sec*., 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Lastly, it is important to note that Class Counsel undertook and litigated this case on a fully contingent basis. Sultzer Decl. ¶ 44. "Counsel should be rewarded for undertaking [those risks] and for achieving substantial value for the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014); *see also Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[T]he risk of non-payment in cases prosecuted on a contingency basis where claims are not successful…can justify higher fees.").

4.     <u>Class Counsel Provided (and Continue to Provide) High-Quality Representation</u>

When evaluating *Goldberger's* "quality of representation" factor, courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Rsch. Sec. Litig*., 249 F.R.D. 124, 141 (S.D.N.Y. 2008); *Taft v. Ackermans,* No. 02-cv-7951*, 2007 WL 414493, *1 (S.D.N.Y. Jan. 31, 2007). Class Counsel practice extensively in complex federal civil litigation, particularly the litigation of consumer

protection and false advertising class actions and have successfully litigated these types of actions in courts throughout the country for many years achieving significant results for consumers. *See generally Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y.); *Luib v. Henkel Consumer Goods Inc.*, Case No. 1:17-cv-03021-BMC (E.D.N.Y.); *see also* ECF Nos. 66-2, 66-3, 66-4, 66-5 (Class Counsels' firm resumes).

"[T]he quality of representation … may be measured in large part by the results that counsel achieved for the classes." *Payment Card*, 991 F. Supp. 2d at 441. Beyond general qualifications, this factor is satisfied by Class Counsel's obtaining a $3.65 million settlement on behalf of the Class. Class Counsel's ability to obtain such a substantial recovery from aggressive defendants who are represented by one of the top defense firms in the country, is a testament to the skill with which Class Counsel have prosecuted this case. *See Fleisher*, 2015 WL 10847814, at *22 ("The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work.") (internal quotations omitted); *NASDAQ*, 187 F.R.D. at 489 (approving fee award where defense counsel included "the nation's biggest and best defense firms operating on a seemingly unlimited budget over a period of four years"); *WorldCom*, 388 F. Supp. 2d at 357-58 (finding that counsel "obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country"); *In re Warner Comm'ns. Secs. Litig*., 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."). Here, Defendants are represented by Sidley Austin LLP ("Sidley"). Sidley fervently represented Defendants and defended against Plaintiffs' claims.

Here, Class Counsel has achieved a settlement whereby, on average, Class Members will receive close to the full average purchase price of two products.  Moreover, Class Members will

receive the full purchase price of all products with a submitted proof of purchase.  The significant monetary recovery is in addition to the value added by the injunctive relief. As the *J&J* court recognized there is no "better settlement" than one that provides this sort of "immediate, real, substantial, and practical benefits to the Class Members." *J&J* (ECF No. 95 at 25).

    5.    The Fee Request Is Reasonable in Relationship to the Settlement

Courts in this Circuit recognize that large, complex class action lawsuits present considerable risk and require extensive work by counsel. As such, courts often award fees at or even above the percentage requested here. As described more fully herein, the requested fee and reimbursement of expenses equaling one-third of the common fund falls in line with fee awards in comparable actions in the Second Circuit. This is especially true when as here the Settlement resulted in hundreds of thousands of claims in which the class members will recover a significant portion of the purchase price and provided relief above and beyond the recall in addition to the invaluable injunctive relief.  Such a result would likely not even have been possible in the event the case was successfully tried before a jury.

    6.    Public Policy Supports Approval of the Fee

Public policy also supports providing attorneys' fees in class action cases, as class actions are an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Where, as here,  any individual reward is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely … be heard." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on … small-scale class actions." *Id*.; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (private attorneys "should be encouraged" to take the risks required to represent those who would not otherwise be protected from socially undesirable activities, including fraud.).  Public policy is in favor of rewarding counsel who

persevere through risky litigation and achieve favorable results for the class they represent.  Here, without private counsel taking on the risk of this lawsuit and having the skill and resources to pursue the claims vigorously, the Settlement Class would have recovered nothing, and important public interests would not have been vindicated. Awarding a reasonable percentage of the common fund properly motivates zealous enforcement of consumer protection laws and incentivizes skilled counsel to bring meritorious cases. *See WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

Class Counsel's efforts in this Litigation are the only way Plaintiffs and the Class will receive any compensation. Plaintiffs' counsel in such cases are typically retained on a contingent basis due to the huge commitment of time and expense required relative to the losses suffered by an individual representative plaintiff. Class Counsel took on this case despite the uncertainty and volatility of law to consumer class actions, especially ones seeking damages for economic loss as a result of alleged contamination, and persevered in obtaining a settlement allowing the Settlement Class Members to receive cash compensation. Such a result should be rewarded. An important public policy interest is served by awarding attorneys' fees adequately compensating counsel.

**B.    The Requested Fee Represents a Reasonable Percentage-of-the-Fund**

In addition to being reasonable under *Goldberger,* the fee and costs requested by this motion, $1,216,666, or one-third of the Settlement Fund, are reasonable under the percentage-of-the-fund method and is consistent with many other fee awards granted in other class actions in this Circuit and in similar litigations. *See*, *e.g.*, *Torres v. Gristedes Operating Corp.*, 519 F. App'x 1,

5-6 (2d Cir. 2013) (acknowledging one-third of common fund is benchmark in Second Circuit and affirming higher percentage – 52.2% - of settlement value for attorney fees and costs.)

Indeed, in recent litigations involving alleged benzene contamination and other consumer fraud actions, courts have granted similar fee requests. *See Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, LLC,* Case No. 1:22-cv-00291-BMC (S.D.N.Y. Jan. 10, 2023) (ECF No. 39) (awarding a third of the settlement fund for attorneys' fees and costs in a similar benzene contamination); *J&J* (ECF No. 95) (awarding one third of settlement fund and 1.3 multiplier to class counsel in similar benzene contamination action); *see also*, *e.g.*, *Trinidad*, 2014 WL 4670870, at *11 ("[A]warding fees of 33% is common in this district."); *Hernandez*, 2022 WL 1032522, at *1 (same); *Beckman*, 293 F.R.D. at 477 ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Warren*, 2008 WL 4371367, at *22 (awarding class counsel attorneys' fees and expenses at 33.33% of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *Reyes*, 2011 WL 4599822, at *8 (noting fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements."); *Rapoport-Hecht*, 2017 U.S. Dist. LEXIS 219060, at *8-9 (awarding 33.3% of $4.5 million settlement fund); *Raniere*, 310 F.R.D. at 220-22 (approving one-third of $4,650,000 settlement as fees); ); *Luib v. Henkel Consumer Goods, Inc.*, 2018 U.S. Dist. LEXIS 18598 (S.D.N.Y. Feb. 5, 2018) (awarding one third of settlement fund to class counsel for attorneys' fees and expenses) *Khait*, 2010 WL 2025106, at *8 (awarding 33% of $9.25 million settlement fund); *Willix*, 2011 WL 754862, at *6-7 (awarding one-third of $7.675 million settlement fund); *Clark*, 2010 WL 1948198, at *8-9 (awarding one-third of $6 million settlement fund); *Puglisi*, 2015 U.S. Dist. LEXIS 100668, at *3-4 (awarding 33.3% of $9.9 million settlement fund).

Class Counsel's fee request is also reasonable given the complexities and risks discussed herein and within the parameters of fee awards in similar class actions in this Circuit. As discussed above, Class Counsel's fee request is also supported by the *Goldberger* factors. Therefore, Class Counsel's requested fee is reasonable under a percentage-of-recovery analysis.[7]

### C.    A Lodestar-Multiplier "Cross-Check" Further Confirms the Reasonableness of Class Counsel's Requested Fee

The lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Accordingly, the lodestar method is used in this Circuit only "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Id.* "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

Class Counsel collectively billed 1,465.5 hours in this Litigation. Sultzer Decl. ¶ 61. At their usual and customary rates, and applying the rates in existence at the time the work was undertaken, these hours translate into approximately $1,059,305.77 in total lodestar as of March 7, 2023. *Id.* Additionally, Class Counsel expended $20,918.22 in unreimbursed expenses. *Id.* ¶ 62. As such, Class Counsel's request amounts to $1,195,747.78 in attorneys' fees and represents a total multiplier of 1.02.

This request for a modest multiplier is squarely within the range awarded by courts in this District, as well as across the country. *See, e.g.*, *J&J*, ECF No. 95 (awarding 1/3 of settlement fund and 1.3 multiplier to class counsel in similar benzene contamination action); *CDS*, 2016 WL 2731524, at *17 (approving attorneys' fees constituting a multiple of 6.36 times the lodestar);

---

[7] At the Court's request, Plaintiffs' counsel is willing to file detailed time records for the case under seal should the Court desire to conduct its own cross check.

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (noting "lodestar multiples of over 4 are awarded by this Court"); *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (describing a 4.65 lodestar multiple as "modest" and "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, at *6-8 (S.D.N.Y. Aug. 24, 1992) (awarding a lodestar multiplier of 6); *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *28 (S.D.N.Y. Oct. 19, 2005) ("Taking the circumstances of the case into consideration, a multiplier of 1.85 is reasonable and, as a "cross-check," supports counsel's fee application. In this Circuit, contingency fees of 1.85 times the lodestar and greater have been deemed reasonable by the courts."); *Hesse v. Godiva Chocolatier, Inc.*, 2022 U.S. Dist. LEXIS 72641, at *40 (S.D.N.Y. Apr. 20, 2022) (approving lodestar multiplier of 1.9 as reasonable in consumer class action).

Therefore, Class Counsel respectfully submit that the lodestar cross-check supports the reasonableness of the requested fee award.

### D.    The Reaction of Class Members Supports Class Counsel's Fee Request

Finally, the reaction of Class Members to the settlement and to Class Counsel's fee and cost request, which was disclosed in the Notice, confirms the reasonableness of Class Counsel's request. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014) ("In addition to the criteria set forth in *Goldberger*, courts in the Second Circuit consider the reaction of the class to the fee request in deciding how large a fee to award."). The Notice informed members of the Settlement Class that Class Counsel intended to seek a fee award plus

reimbursement of reasonable litigation expenses in an amount to not exceed one-third of the common fund plus any additional costs of settlement claims administration. *See Long Form Notice*, ECF No. 35-1. Ex B1. This motion is consistent with the Notice provided.

The reaction of the Settlement Class has been robust and overwhelmingly favorable. As detailed above, there has been no objections to the requested fee award despite hundreds of thousands of submitted claims.

## III.   CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF LITIGATION COSTS IS REASONABLE

Under the common fund doctrine, class counsel customarily are entitled to reimbursement of reasonable expenses incurred in the litigation. Fed. R. Civ. P. 23(h); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970) (recognizing the right to reimbursement of expenses where a common fund has been produced or preserved for the benefit of a class); Alba Conte, *Attorney Fee Awards* § 2.08, at 50-51 (3d ed. 2004); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."); *Fleisher*, 2015 WL 10847814, at *23 (noting as typical expenses in complex cases "fees paid to experts, mediation fees, notice costs, computerized research, document production and storage, court fees, reporting services, and travel in connection with th[e] litigation").

Here, as part of the requested award, Class Counsel are seeking reimbursement of reasonable and necessary litigation expenses. *See, generally,* Sultzer Decl.; Declaration of Charles Schafer; Declaration of Sarah N. Westcot; Declaration of Nick Suciu. These expenses include all filing, general litigation, expert, and mediation-related expenses that were all incurred in the normal course of business and were essential to the successful prosecution of this lawsuit. Class Counsel are entitled to be reimbursed for those expenses in addition to the attorneys' fees because

23

"substantial expenses were necessary in this complex … case." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015); *see also CDS*, 2016 WL 2731524, at *18. None of Class Counsel's expenditures have yet been reimbursed. Indeed, "[t]he fact that Class Counsel was willing to expend their own money, where reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Fleisher*, 2015 WL 10847814, at *19. These expenses have also been reviewed by Class Counsel and were found to be reasonable. In sum, there is "no reason to depart from the common practice in this circuit of granting expense requests." *In re Visa Check/Mastermoney Antitrust Litig*., 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003), *aff'd sub nom*., *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2d Cir. 2005).

## IV.   PLAINTIFFS' REQUEST FOR MODEST SERVICE AWARDS IS REASONABLE

Class Counsel seeks a $500 service award for each of the named Plaintiffs for their active participation in his Litigation. In the Second Circuit, plaintiff service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant and any other burdens sustained by plaintiffs." *DeLeon v. Wells Fargo Bank, N.A.*, 2015 WL 2255394, at *7 (S.D.N.Y. May 11, 2015); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports incentive awards of between $2,500 and $85,000).

Here, Plaintiffs' participation in this Litigation included carefully reviewing pleadings including the complaint and opposition to the motion to dismiss, regular communication with Class Counsel, and participation in mediation and review of the Settlement Agreement. As such, Class Counsel request the Court grant a $500 service award for each of the named Plaintiffs.

24

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court approve the request for: (i) the payment of attorneys' fees in the amount of $1,195,747.78; (ii) reimbursement of litigation expenses in the amount of $20,918.22; and (iii) a $500 service award for each of the named Plaintiffs.

Dated: March 8, 2023　　　　　　　　　Respectfully submitted,

**THE SULTZER LAW GROUP, P.C.**

By: _/s/ Jason P. Sultzer_
Jason P. Sultzer, Esq.
Philip Furia, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Phone: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

**BURSOR & FISHER, P.A.**
Max S. Roberts, Esq.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot, Esq.*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: swestcot@bursor.com

**LEVIN SEDRAN & BERMAN**
Charles E. Schaffer, Esq.*
David C. Magagna Jr., Esq.*
510 Walnut Street, Suite 500

Philadelphia, PA 19106
Tel: 215-592-1500
E-Mail: cschaffer@lfsblaw.com
        dmagagna@lfsblaw.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu, III, Esq.*
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Fax: (865) 522-0049
E-Mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Jennifer Czeisler, Esq.*
Virginia Ann Whitener, Esq.*
Russell Busch, Esq.*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
E-Mail: jczeisler@milberg.com
        gwhitener@milberg.com
        rbusch@milberg.com

*Attorneys for Plaintiffs and the Settlement Class*